Opal Cochran, Appellant, v. Louis Koller, Sr., Appellee.

Gen. No. 41,517.

Opinion filed April 23, 1941.

ROYAL W. IRWIN, of Chicago, for appellant.

HINSHAW & CULBERTSON, of Chicago, for appellee; OSWELD G. TREADWAY, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

The plaintiff, a young woman 25 years of age, was injured in an automobile accident on March 5, 1939, and instituted suit against Louis Koller, Sr., to recover damages for personal injuries. The jury returned a verdict of not guilty.

On the evening of March 4, 1939, the plaintiff went to the Princess Ballroom where she met two young men acquaintances, who drove her to her home in Riverside. When they arrived there it was decided they would take a drive, and the plaintiff, thereafter rode in the back seat of the automobile with one of the young men, while the other one drove the car. They were on their way home and were driving in a southerly direction in route 66 approaching the intersection of 46th street when the accident occurred. Route 66 is the principal highway to Joliet. It is concrete, four lanes wide. As one approaches 46th street going south in route 66 the road is straight, but a little to the south of the intersection of 46th street the road makes a broad turn to the right. 47th street crosses route 66 on the curve.

The automobile in which the plaintiff rode proceeded in a southerly direction in the west half of route 66 going at the rate of 25 or 30 miles an hour. The defendant rode in the back seat of the automobile owned by him but driven by his son in the opposite direction

on route 66, approaching the car in which the plaintiff rode.

As the defendant's car rounded the curve in route 66 approaching the intersection with 46th street, there is evidence that it was observed to zig zag back and forth on the two ways in the north-bound lane, and that instead of straightening out after leaving the curve continued on to its left across the center line of route 66 and ran head-on into the automobile in which the plaintiff rode in the southbound lane. The evidence upon this question is controverted.

The plaintiff suggests that she suffered severe injuries of a permanent character, but that the extent of the injuries is not material at this time.

It is contended by plaintiff that the attorney for the defendant improperly injected into the case the claim that the plaintiff who was unmarried had given birth to an illegitimate child, and also that she had had an abortion performed. It seems that this is the question involved in this appeal. The plaintiff urges that the effect of this testimony before the jury was disastrous, in that it must have influenced the jury so that they returned a verdict of not guilty.

The plaintiff on this appeal insists that the verdict is against the manifest weight of the evidence, and suggests that the issue on the trial was clear cut as to whether the accident occurred in the southbound lanes of route 66, or whether it occurred in the northbound lanes. There is evidence, testified to by witnesses for the plaintiff, that the accident occurred in the southbound lanes, whereas the three witnesses for defendant, who were occupants of defendant's car, testified that the accident occurred east of the center line of the road. Upon this question the plaintiff is of the opinion that the defendant was unable to produce any disinterested witnesses, and argues that if the court would disregard the testimony of plaintiff's and defendant's interested witnesses there is still the testimony of wit-

nesses who were disinterested and who testified as to the manner in which the collision occurred. The defendant argues, however, that the testimony of the witnesses is in hopeless confusion and contradiction.

Attention is called by the defendant to facts which it is claimed are not in dispute; that the plaintiff, age 25, on the evening of March 4, 1939, went alone to the Princess Ballroom, where she met Frank Hejhal, age 17, and Willard Jaeck, age 19; that the plaintiff had not been with either of these boys before; that the three left the ballroom about 11:30 p. m. and drove, so they testified, direct to the plaintiff's home, somewhere in Riverside; that they arrived at her home at 12:30 a. m.; that witness Hejhal did the driving and the plaintiff sat in the front seat with him; that they remained in front of plaintiff's home about 10 minutes talking and listening to the radio; that, thereupon, witness Hejhal and the plaintiff got into the back seat and witness Jaeck took the wheel; and that they then started out for a drive. The defendant suggests that while each of them apparently felt it necessary to explain the purpose of this drive, their explanations were quite different. The further facts given as undisputed are that they circled back to Harlem avenue, from Harlem avenue to U. S. 66 and then south to a point somewhere near where it intersects with 46th Street, the place where the accident occurred; that the distance traveled was three or four miles and that the speed just before the accident was 30 to 35 miles.

The defendant, Louis Koller, together with his wife and son, left their home at 1929 Addison Street at 2:30 in the afternoon of March 4th, it being Saturday and went to Joliet, Illinois, where they visited friends. They left Joliet about 12:25 a. m. and proceeded home over route 66, the son, Clayton Koller, driving, his mother seated beside him in front and the defendant, his father, in the rear seat, and were driving in a northerly direction as they approached the place of

the accident. It is further suggested by the defendant that all of the occurrence witnesses agreed that immediately before the occurrence the drivers of both cars turned to the left, that they collided head-on, the damage to both cars being to the right front; and that after the accident the car in which the plaintiff was riding was facing southeast and the defendant's car towards the northwest. The witnesses also agreed that route 66 is a four-lane highway, runs north and south at the place of the accident, and that as it proceeds south near 47th street it curves to the west. The defendant's testimony was to the effect that the place of the collision was south of 46th street and within the northbound traffic lane, while the testimony of the plaintiff's witnesses is that the collision took place in the southbound traffic lane and is in disagreement with regard to whether it happened north or south of 46th street.

Defendant does not agree with the plaintiff's contention that the verdict is against the manifest weight of the evidence, but on the contrary argues that it is in accord with it. The questions involved were, of course, for the jury to pass upon. As to the question of disregarding the testimony of interested witnesses, and looking to that of the disinterested witnesses, this is not a fair rule to ask this court to apply in passing upon the questions involved. It is for the jury to pass upon the witnesses, their interest or lack of interest, and their credibility. The jury in this case passed upon those questions and was properly instructed by the court. It is contended that plaintiff had the larger number of disinterested witnesses. This fact is to be considered, but, still, it is for the jury to consider the appearance of the witnesses and to pass upon which of them are the more credible and reasonable in their testimony regarding the facts as they occurred at the time of the collision. One of the cases cited is that of *Burnham v. Peoria Ry. Co.,* 223 Ill. App. 573, where in

its opinion the court said; " . . . Appellant contends that on this question it had the greater number of witnesses and therefore the jury were not warranted in finding for plaintiff. The number of wit-' nesses on each side is not the only matter to be considered. Upon a consideration of all the evidence of the witnesses on this subject, we conclude the jury were warranted in believing appellee's witnesses on that subject and therefore finding defendant guilty of negligence." Further, in the case of *Harre v. Fayette County Mut. Tel. Co.*, 284 Ill. App. 292, it appears that the plaintiff, who was riding on top of a truck load of baled straw, was swept off onto the ground by a guy wire belonging to the defendant which was stretched across the highway. Six witnesses had measured the height of the wire for the plaintiff and two for the defendant. In affirming a judgment for defendant, the court said;

"Whether the wire was 11 feet and 3 inches, or 13 feet and 4 inches, above the highway track, was a question of fact. The jury saw and heard the witnesses and were in better position than are we, to pass upon their credibility, and the mere fact that six swore to the lower height, and two testified to the greater, is not alone sufficient for us to determine which group told the truth. The weight of the testimony is determined, largely, by the credibility to be accorded to the evidence of the several witnesses, and not inferred, merely, from numbers." Considering the facts appearing in this record, it was for the jury to pass upon the questions involved, and, having done so, we are not in a position to find as a fact that the verdict was against the manifest weight of the evidence. We are not inclined to disturb the verdict on this ground.

It is urged by the plaintiff that counsel for the defendant acted improperly in the cross-examination of the plaintiff by asking improper questions. The ground upon which these questions were called to the

attention of the plaintiff was as to her physical condition prior to the accident. It appears in plaintiff's brief that there was no claim made either in the complaint, by the plaintiff's attorney, or the plaintiff herself that she received any injury to her female organs, and that no claim was made that the alleged cessation of menstruation resulted from the accident and that no damages were claimed on that account. This matter was first called to the attention of the court and jury by a statement of Dr. Gunnar, a physician who attended the plaintiff, made on direct examination by the plaintiff's attorney. Dr. Gunnar testified in part that "She was extremely nervous and she complained there had been a cessation of menstruation for several months." This statement was made by the doctor in response to a question asked of him with reference to an examination made by the doctor on May 1st, following the accident. Defendant contends that there can be no question but that it was intended that the jury should take this statement of the doctor into consideration if the case got so far as to require the assessment of damages, and calls it to our attention that at no time during the trial were the jury informed that the plaintiff was not seeking damages for this particular ailment and this testimony of the doctor was never withdrawn.

From the record it appears that the plaintiff was 25 years of age, doing housework, and that she testified on cross-examination by defendant's counsel that she was not married and never had been married. As already indicated, Dr. Gunnar, who treated her, testified that she was extremely nervous and that she complained there had been a cessation of menstruation for several months. Upon the cross-examination of plaintiff the following questions and answers appear;

"Q. I believe the doctor told us about some menstrual trouble, did you have any menstrual trouble while in the hospital?

"A. While I was in the hospital?

"Q. Yes. A. Yes, sir, I did.

"Q. Was that the first time you had any menstrual trouble?

"A. Yes, sir.

"Q. You had given birth to a child before that, had you?

"A. I have, yes.

"Mr. Irwin: I object, Your Honor.

"The Court: Sustained,

"Mr. Hinshaw: Exception. She has claimed all along these were the result of this accident. If she wants to withdraw the claim, that is something else.

"Mr. Irwin: I move that counsel's statements be stricken out, Your Honor.

"Mr. Hinshaw: I have proof of it.

"The Court: Sustained, Proceed."
and finally another question was asked of plaintiff "Did you ever suffer an abortion before this accident?" to which an objection was made and sustained by the court.

After the cross-examination of plaintiff was completed, counsel for the parties retired to the Judge's chambers. There was a discussion by the parties but it does not appear from the proceedings that were had in chambers that any motions were made or considered by the court on the questions involved. The fact is, however, that the plaintiff did not make a motion to withdraw a juror, so that there would have been a further trial in this case, nor was any other motion made to withdraw a juror during the course of the trial. Counsel for the plaintiff proceeded with the trial and during the course of the balance of the hearing, nothing further was said upon the subject of the examination objected to. Having submitted the facts to the jury, the result being not to plaintiff's liking, plaintiff now urges that there was error in the asking of the questions that were propounded by de-

fendant's counsel. Upon this question, however, we are of the opinion that the plaintiff opened the door for this cross-examination when Dr. Gunnar was examined by plaintiff's counsel, when the doctor said, "She was extremely nervous and she complained there had been a cessation of menstruation for several months." This statement the plaintiff permitted to stand and, of course, the defendant's counsel was permitted under the circumstances to ask questions as to whether the injuries brought about this failure of menstruation. Under the circumstances, there was not such error as would justify the reversal of the judgment.

There is a further question that has been called to our attention regarding the court's refusal to give an instruction presented by the plaintiff. The instruction is as follows;

"While plaintiff must prove her case by a preponderance of evidence, the proof need not be the direct evidence of persons who saw the occurrence sought to be proved, but facts may also be proved by circumstantial evidence, that is, by proof of circumstances, if any, such as to give rise to a reasonable inference in the minds of the jury based upon the proof of the truth of the facts alleged and sought to be proved, provided such circumstances, together with all the other evidence bearing on such facts, constitute a preponderance of evidence." The defendant calls attention that after the return of the verdict the plaintiff filed her motion for a new trial, setting up 17 supposed reasons for said motion, and that it is not set up in said motion for a new trial that the court erred in refusing to give this instruction. It is further suggested by the defendant that at no place in the said motion for a new trial did the plaintiff contend that the refusal on the part of the trial court to give this instruction was error, nor was it urged by the plaintiff on the hearing on the motion for a new trial that there was error in

the refusal to give this instruction. The rule of law is well settled that a failure to specify such an alleged error in the motion for a new trial is a waiver of the error. In the case of *People v. Amore,* 369 Ill. 245, the Supreme Court said;

"Certain instructions given by the Court are claimed to be repugnant and contradictory to each other. In the written motion for a new trial, specific grounds of alleged errors were enumerated, but no complaint was made nor any error charged relative to any instruction, either given or refused. A written motion for a new trial, assigning specific reasons in support of it, limits the party making it to the grounds therein urged. All other errors are deemed waived and will not be considered on review. (*People v. Hatcher,* 334 Ill. 526; *People v. Fox,* 346 id. 374.) A contrary holding would deprive the trial court of an opportunity to correct its own errors, if any." To the same effect see *Ulbricht v. Western Coach Lines,* 289 Ill. App. 164. Under the circumstances the matter of refusing this instruction was not properly before the trial and will not be considered on review.

There is also the plaintiff's contention that there was improper argument by counsel for the defendant. We have examined the arguments as complained of by the plaintiff, but upon a consideration of all the facts as they appear, we are of the opinion that there is not sufficient in the objection to justify a reversal on the ground that the arguments of counsel were improper.

Having considered the questions involved in this appeal, we are of the opinion that the trial court properly denied plaintiff's motion for a new trial and was justified in entering judgment on the verdict of the jury. The judgment is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN and BURKE, JJ., concur.