Martin Chism, Appellant, v. Decatur Newspapers, Inc., Appellee.

Gen. No. 9,692.

Opinion filed March 3, 1950. Released for publication March 29, 1950.

LOUIS L. MASON and F. R. WILEY, both of Decatur, for appellant.

VAIL, MILLS & ARMSTRONG, of Decatur, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

The plaintiff appellant, hereinafter called plaintiff, appeals from an order overruling plaintiff's motion for a new trial following a jury verdict of not guilty in a negligence action for injuries suffered when a truck of the defendant appellee, hereinafter called the defendant, struck the plaintiff, a pedestrian. In the first trial the jury did not agree and the case was retried.

The accident occurred about 8:00 p. m. on April 15, 1947. Cerro Gordo street in the City of Decatur is a public highway running generally in an easterly and westerly direction. It is paved and about 40 feet wide, with sidewalks about six feet in width on either side of the street. Within the block where the accident happened was a driveway about 30 feet wide, running northerly from Cerro Gordo street and across the northerly sidewalk.

Robert Booker, an employee of the defendant, was driving its three-quarter ton truck in the course of his employment. The truck was equipped with a rear-view mirror and spotlight, mounted on two separate arms on the left side, above the door hinge on the cab, the rear-view mirror protruding from the cab about one foot. It was raining. The truck was proceeding easterly on Cerro Gordo street when it made a left turn to the north and entered the driveway. The speed was about 20 miles per hour while traveling on Cerro Gordo street, but was slowed down to from five to eight miles per hour as the truck entered the driveway. Booker testified that as he drove he was looking in front of the truck, and that as he entered the driveway he did not see anyone on the east of the driveway or on the sidewalk immediately east of the driveway. As the truck was crossing the sidewalk he heard a noise coming from his left side and saw a black object go by the window. Booker stopped and found the plaintiff lying

44

by the left back tire and about one foot to the west of the left rear wheel. He did not see the plaintiff before the collision.

The injuries to the plaintiff included a rather large laceration above the left eye that required about 15 stitches to close. X-rays revealed a fracture of the left side of the skull, running from well back of the left ear up over the head and down toward the nose. The plaintiff was unconscious until he arrived at the hospital.

The pleadings include a complaint with two counts.

Count I is a general negligence count, and Count II alleged wilful and wanton misconduct.

In addition to an answer the defendant alleged the following affirmative defense to each count: That the plaintiff walked into the side of the defendant's truck and in so doing did one or more of the following:

(a) Wilfully and wantonly walked into the side of the truck;

(b) Wilfully and wantonly walked along the said sidewalk in such an intoxicated condition that he was unable to control his acts;

(c) Wilfully and wantonly failed to keep a lookout in the direction he was going;

(d) Wilfully and wantonly conducted himself with a conscious indifference to the surrounding circumstances so as to exhibit an utter disregard for his own safety.

The parties have opposite views of the direction the plaintiff was walking. They agree that he was walking on the sidewalk on the northerly side of Cerro Gordo street, but the defense argues that he was going in an easterly direction, while the plaintiff testified that he was walking westerly. Neither Booker nor any of the defendant's witnesses saw the direction the plaintiff was walking prior to the accident. To prove its contention that the plaintiff was walking easterly, the defend-

ant relies on the fact that there was a dent in the spotlight and the rear-view mirror was out of focus. This equipment was on the left side of the truck.

The plaintiff claims that prior to the accident he used the telephone at the Wabash Depot to call his employer about working the next day, and after having done so he started walking to his home by going westerly on the north sidewalk of Cerro Gordo street, and that he continued to walk in that direction until the collision with the truck.

Plaintiff's witness, Delbert Venters, testified that he was standing in the doorway and that he saw the plaintiff walking westerly; that he saw him struck by the truck of the defendant about 8 or 10 feet from the westerly side of the driveway. The witness claims to have seen the truck move easterly on Cerro Gordo street and turn left into the driveway without sounding a horn. He testified that the lights of the truck were on.

The dented spotlight and the rear-view mirror are the main facts relied upon by the defendant to support its theory of the direction the plaintiff was walking, and its conclusion that he walked into the side of the truck. These facts show and logically support the corroborated testimony of the plaintiff that he was walking westerly.

The theory of the defendants as to the affirmative defense is based solely on the alleged intoxication of the plaintiff.

There was at most only meager evidence of intoxication on the part of the plaintiff, but clearly there is no proof that the plaintiff was in such an intoxicated condition that he was unable to control his acts as is alleged in the affirmative defense of the defendant.

Chism said that he had three drinks of whiskey from early that afternoon until five p. m., and that he was not intoxicated. The witness Castelli smelled nothing about the person of the plaintiff after the accident as he lay on the pavement.

46

Kirsten, defendant's witness, smelled intoxicating liquor when he got close to the plaintiff's head. On cross-examination he stated that he was not going to say that he was intoxicated. Defendant's witness, Nelson, said he was not close enough and did not smell liquor on plaintiff's breath, as did defendant's witness Queen. Truck driver Booker claimed to have smelled the odor of alcoholic liquor when about six inches from the plaintiff's face.

The evidence is not sufficient to make the affirmative defenses of the defendant jury questions, and the motion of the plaintiff to dismiss the affirmative defenses should have been granted. It does not appear, however, that this point has been properly preserved for review here, for the reason that it is not contained in the plaintiff's motion for new trial as originally filed or as amended, as is required by paragraph 192 of chapter 110, being section 68 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.068], which requires that the one moving for the new trial must ". . . file the points in writing, particularly specifying the grounds of such motion . . . ." *Patargias v. Coca Cola Bottling Co.*, 332 Ill. App. 117; *Chicago City Ry. Co. v. Smith*, 226 Ill. 178; *Yarber v. Chicago & A. Ry. Co.*, 235 Ill. 589; *Baker v. Thompson*, 337 Ill. App. 327; *Pajak v. Mamsch*, 338 Ill. App. 337. All of these cases hold that only the errors complained of in the written motion for new trial are saved for review, and all others are waived.

However, this point as to the insufficiency of the proof to sustain the affirmative defenses, though in itself waived by virtue of the failure to refer to them in the motion for new trial, is nevertheless preserved insofar as objections to the instructions are concerned. Defendant's instructions (b) and (e) both refer to the affirmative defenses including that of intoxication of the plaintiff to the extent that he is unable to control his acts. To give an instruction that refers to allega-

47

tions of the affirmative defenses of the defendants when these allegations have not been proved or established by evidence is error. *Chevalier v. Chicago Transit Authority,* 338 Ill. App. 119; *Wilcke v. Henrotin,* 241 Ill. 169.

The defendant tendered 25 instructions, of which 21 were given. Six of these instructions concluded "The jury must find for the defendant," or "You must find the defendant not guilty," or words to that effect. Nine instructions mentioned that the plaintiff must be in the exercise of ordinary care for his own safety or that he must not be guilty of contributory negligence.

One instruction, defendant's (a), mentioned the matter of due care twice; and defendant's instruction (1) three times mentioned the duty of the jury to disregard sympathy.

██ This was not a complicated case. It was a typical negligence action, and no unique legal points were involved. It is true that the theories of how the accident occurred were in conflict, but we see nothing about the case that should make the instructions so lengthy, involved and repetitious. The wise trend of the courts of this State is definitely against such instructions. *Baker v. Thompson,* 337 Ill. App. 327, and the cases therein referred to.

██ It is not proper for a party to a lawsuit to ask a witness to repeat eight or nine times a bit of evidence that is favorable to the interrogator for the purpose of impressing that fact upon a jury, and by the same token a jury should be told once only about each proposition of law. To do otherwise will lead to a contest between the litigants to see how often they can repeat that which seems favorable to their cause.

We are fully in accord with the view expressed in *Baker v. Thompson, supra,* and feel that when defense attorneys in negligence actions tender an excessive number of instructions, filled with repetition and containing many of a peremptory nature, they do so at

their own peril in the event the case is reviewed. Such instructions cannot aid the jury members, but rather will hinder them in the performance of their duty of giving to each side a fair and impartial trial.

Further error is found in defense instruction (k) which reads in part "that for an act to become wilful, wanton and malicious under the law, as such terms are used in this lawsuit, it must be shown by a preponderance or greater weight of the evidence either that there was a particular intention to injure the plaintiff or a conscious indifference to the surrounding facts and circumstances to such a degree which authorizes a presumption of an intention to injure persons generally . . . . Otherwise, there is no authority in law to conclude that an injury was intended or that such an act on the part of the person complained against was either wilful, wanton or malicious. . . . you must determine whether or not it is shown by a preponderance or greater weight of the evidence . . . either actually intended to injure the plaintiff or exhibited such a conscious indifference to the surrounding facts and circumstances which authorizes a presumption of an intention on the part of . . . to injure persons generally."

██ This instruction limits a wilful and wanton action to a case where there is an actual or implied intent to do bodily harm. It suggests the necessity of ill will or facts from which ill will could be presumed. To place this limitation on a definition of wilful and wanton misconduct is misleading and here amounts to error.

The above instruction fails to include many of the elements contained in the definition of a wanton act in *Bartolucci v. Falleti*, 382 Ill. 168, and the cases there cited. At page 174 the court said:

"Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act

or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness.''

We do not mean to imply that we have concluded that the facts in this case amount to wilful and wanton misconduct. The jury, however, was not properly instructed on this phase of the law for the reason that the instruction was not broad enough to include all of the possibilities that could amount to legal wilfulness. █ Defendant's instruction (c) concludes with the words:

"and this rule as to the burden of proof is binding in law and must govern the jury in deciding this case. The jury have no right to disregard this rule or to adopt any other in lieu thereof, but in considering the evidence and coming to a verdict the jury should adhere strictly to this rule.''

In *Alexander v. Sullivan,* 334 Ill. App. 42, we said the following about the same words used in an instruction in a comparable case:

"The quoted part of the instruction was argumentative and unduly emphasized the rule of law stated in such instruction. Such . . . was no more appropriate than it would have been if added to each of the eighteen given instructions.''

We are still of the opinion that such an instruction should not be given.

Other instructions are in dispute, but it will serve no useful purpose to lengthen this opinion when we

have already concluded that this plaintiff has not had a fair trial with the instructions in the condition they are here. For the reasons herein stated the plaintiff should have a new trial, and his motion therefor should have been granted.

*Reversed and remanded.*