Elizabeth Ann Pearman, a minor, by Lucille Pearman, her mother and next friend, and Lucille Pearman, Plaintiffs, v. Jack Morris and Gladys Hoagland, Defendants.

Elizabeth Ann Pearman, Plaintiff-Appellee, and Jack Morris, Defendant-Appellee, v. Gladys Hoagland, Defendant-Appellant.

### Gen. No. 10,145.

Third District.

December 16, 1957.

Released for publication January 2, 1958.

Chapin and Chapin, of Springfield, for appellant.

Giffin, Winning, Lindner and Newkirk and Livingstone, Mueller, Drake and Davlin, all of Springfield (Alfred F. Newkirk, and Clifford A. Livingstone, of counsel) for defendant-appellee, Jack Morris. Earl S. Hodges, of Springfield, for plaintiff-appellee, Elizabeth Ann Pearman.

JUDGE REYNOLDS delivered the opinion of the court.

On August 19th, 1952, the plaintiff Elizabeth Ann Pearman was employed to do some chores for the defendant Gladys Hoagland, who resided in the Village of Pawnee, in the county of Sangamon. Elizabeth Ann Pearman was 13 years of age, and lived on the other side of Pawnee from the Hoagland home. At the time of the accident the defendant Hoagland was taking the plaintiff home. The defendant Jack Morris was a resident of Pawnee, but worked in Springfield. The plain-

tiff was injured in an automobile accident involving the car of Gladys Hoagland, driven by her, and the car of Jack Morris, driven by him. The Hoagland and Morris cars were both proceeding to the east on Illinois State Route No. 104, and the accident occurred in a slight S curve immediately west of the village limits of Pawnee. Mrs. Hoagland, driving a blue Studebaker, was traveling at about 55 miles per hour when she saw the tan Ford driven by Jack Morris coming up behind her. She testified the Ford was traveling "real fast." Morris pulled into the north or passing lane and started by the Hoagland car. At that time, or shortly afterwards, the car of one Joseph Gearhart appeared about a block away, coming towards them from the east. Up to this point there is very little dispute as to the facts, and even from this point on, there is not too much in dispute. Morris is not clear as to whether his car struck or side-swiped the Hoagland car when he pulled back into the east bound lane, but testimony shows rather conclusively that it did. There was blue paint on the Morris car, and tan paint on the Hoagland car and Mrs. Hoagland testified that the Morris car struck her car. Morris admitted that in order to pass he had accelerated his speed to 75 miles per hour, but contends that Mrs. Hoagland had speeded up her car to about 70 miles per hour. While Mrs. Hoagland does not admit the speeding up of her car, she does not definitely deny it, but says: "I may have speeded up my car when he was in the act of passing, but I don't know that I did." The plaintiff Pearman testified that Mrs. Hoagland did speed up as the Morris car started to pass, and that she screamed "Stop, Gladys, stop." The plaintiff also testified that the Hoagland car increased speed after it was off the highway. At the time of the impact and seeing the car approaching from the east, Mrs. Hoagland testified that she pulled off on the shoulder to her right, and continued along this shoulder a quarter of a block, and the stop sign loomed up and

she then lost control and her car went into a ditch on the right, and after continuing down the ditch struck an embankment and was wrecked. In her testimony defendant Gladys Hoagland testified she had her car under control until the stop sign came up and that she then became hysterical and lost control. That when the stop sign appeared she froze in the car.

When the Hoagland car ran into the embankment in the ditch, the plaintiff was injured severely sustaining a fractured knee and fractured nose. The extent of her injuries was not disputed.

The defendant Hoagland, who testified as an adverse witness when called by plaintiff under Section 60 of the Practice Act, offered no evidence in her defense, and the only evidence offered for the defendant Morris was an engineer's drawing of the highway showing the S curve. The jury returned a verdict finding the defendant Gladys Hoagland "guilty" and assessing the damages of the plaintiff Elizabeth Ann Pearman at the sum of $17,500 and finding the defendant Jack Morris "Not Guilty." Answering a special interrogatory, the jury found that the plaintiff was in the employ of the defendant Glady Hoagland at the time and place of the accident. Judgment was entered on the verdict and the defendant Gladys Hoagland filed her Post Trial Motion which was denied. The defendant Hoagland thereupon appealed to this court. In her appeal, defendant-appellant Hoagland not only seeks to reverse the judgment in favor of the plaintiff Elizabeth Ann Pearman against her, but also seeks to reverse the judgment in favor of the defendant Jack Morris, as to the claim of the plaintiff against him. To that part of the appeal, which seeks to reverse the judgment in favor of the defendant Jack Morris, that defendant has filed his motion to dismiss the appeal as to him. That motion will be considered in disposing of the whole matter.

The appellant in her appeal raises six propositions which she assigns as error. 1. The verdict finding the defendant Hoagland guilty and the defendant Morris not guilty must be sustained by the complaint insofar as it charges wilful and wanton misconduct, by the evidence of such misconduct and by plaintiff's theory of the case or it must be set aside. 2. Peremptory instructions naming one defendant and omitting reference to the other defendant, unduly emphasizing the rights of one defendant over the other are erroneous. 3. Abstract instructions were submitted. 4. The jury was incorrectly instructed as to the statutory law governing. 5. The instructions taken as a series singled out one of the parties and gave undue prominence to his rights over that of the other parties. 6. Counsel for the defendant Morris over objection incorrectly quoted testimony.

■ The appellant's theory as to Proposition No. 1, seems to be that the plaintiff in Count IV of the complaint charges joint wilful and wanton conduct against the defendant-appellant Hoagland and the defendant-appellee Morris, and that the jury must find both of them guilty or both of them not guilty, but cannot find one guilty and one not guilty. In support of this position the appellant cites a number of cases, but none of them seem to support this exact proposition. The decisions in Greene v. Noonan, 372 Ill. 286, Jernberg v. Mix, 199 Ill. 254; Drefahl v. Hinchcliff, 310 Ill. App. 110; Buglio v. Cummings, 317 Ill. App. 73; Countryman v. Sullivan, 344 Ill. App. 371 announce the rule that where a declaration consists of several counts, one or more of which state a cause of action the gist of which is malice, with others based upon negligence only, and the verdict is general, without specifying the count on which it is based, the presumption is that the verdict is based upon a cause of action of which malice is the gist. Even so, if there is any

evidence in the record to show wilful or wanton conduct on the part of either of the defendants, this court cannot perceive why a jury in arriving at a decision of a question or questions of fact, cannot and as a matter of duty should, determine whether one or both of the defendants were guilty of wilful and wanton conduct and return a verdict in accordance with their findings. There is evidence to show that the defendant Morris was traveling at a high rate of speed and had pulled out to go around the car of the defendant Hoagland and that the defendant Hoagland instead of continuing at her own rate of speed had speeded up to about 70 miles per hour. The evidence showed that when a car appeared coming from the east, defendant Morris cut sharply to the right, side-swiping the Hoagland car, but not knocking the Hoagland car off the road. That while side-swiped, Mrs. Hoagland retained control of her car and drove off to the right on to the shoulder and continued along this shoulder until she came to the stop sign. There is testimony on the part of the plaintiff to show that instead of decreasing her speed after getting on the shoulder, that Mrs. Hoagland increased her speed. The testimony of Mrs. Hoagland, called as an adverse witness admits or at least does not deny that she could have turned back onto the concrete highway, but instead, she became hysterical and turned down into the ditch, and after continuing down the ditch came against an embankment which wrecked her car and injured the plaintiff. There is ample evidence in this record which would justify the jury in finding either or both of the defendants guilty of wilful or wanton conduct in the operation of their automobiles. The defendant Morris was probably traveling too fast when he started to pass, but when confronted with the decision, upon observing an approaching automobile, of either trying to drop back and get behind the Hoagland automobile, or of trying

492

to pass, decided to speed up and pass. If the Hoagland car had continued at its normal or regular rate of speed Morris would have passed safely, but as he was passing, Mrs. Hoagland, for some unknown reason, speeded up her automobile.

The question of wilful and wanton conduct has been decided many times by our courts. As announced in the case of Bartolucci v. Falleti, 382 Ill. 168, "Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness."

Using the language of the Bartolucci v. Falleti case as a yardstick, or setting out of the requirements to constitute wilful and wanton conduct, the actions of the defendants could well be considered as falling within the definitions set forth.

The question thus posed for the jury in this case was one of fact. Was either of the defendants guilty? Was one guilty and one not guilty? Were both of them guilty? The jury found that Morris was not guilty and that Hoagland was guilty. In the absence of reversible error, which we cannot say occurred in this case, we must abide by the verdict of the jury on this question of fact.

This is not a novel matter for Illinois. Our courts have uniformly upheld a judgment against one tort-feasor and a release of one or more other tort-

493

feasors. As said in Chmielewski v. Marich, 2 Ill.2d 568, "Every joint tortfeasor is liable for all damages to which his conduct has contributed, and it is no defense that these damages would not have occurred without the concurring misconduct of another person. (Siegel, Cooper & Co. v. Trcka, 218 Ill. 559.) As a result the plaintiff need not join all the tortfeasors as defendants (Lasher v. Littell, 202 Ill. 551; Village of Carterville v. Cook, 129 Ill. 152,) and if he does sue more than one in the same action, he may, after a favorable verdict against all, dismiss the action as to one and take judgment against the others alone. (Postal Telegraph-Cable Co. v. Likes, 225 Ill. 249.) The jury may properly return a verdict in favor of one tortfeasor and against another, (Republic Iron and Steel Co. v. Lee, 227 Ill. 246, 254,) or the court may direct a verdict in favor of one codefendant and let the case against the other go to the jury, which may thereupon return a verdict against the latter. (Humason v. Michigan Central Railroad Co., 259 Ill. 462; Fowler v. Chicago Railways Co. 285 Ill. 196.) If a verdict is returned against two defendants, the court may grant a new trial as to one of them only. (Illinois Central Railroad Co. v. Foulks, 191 Ill. 57.)"

In the light of the cases cited above this court can perceive no merit in Proposition 1 of the defendant-appellant.

Proposition II of the defendant-appellant is that peremptory instructions which name one defendant and omit the other, unduly emphasizing the rights of one defendant over the other are erroneous. In support of this proposition the defendant-appellant refers to defendant-appellee Morris' Instructions No. 2, 3, 4 and 6. The court gave twenty instructions, three for the plaintiff, twelve for the defendant Morris, and five for defendant Hoagland. Neither the plaintiff or the defendants complained that any offered instruction was refused.

Defendant-appellant Hoagland cites a number of cases to support her contentions that peremptory instructions which name one defendant and omit the other, are erroneous. While some of the cases cited deal indirectly with this contention, the cases cited as a whole continue the trend of our reviewing courts against prolific and repetitious instructions. In the case of Randal v. Deka, 10 Ill.App.2d 10, the court gave nineteen instructions at the request of the defendant. Eight of these instructions concluded with "you should find the defendant not guilty" or similar language. The court in that case, quoting extensively from the case of Chism v. Decatur Newspapers, Inc., 340 Ill. App. 42, criticized the giving of a repetitious instruction in these words:

" 'This was not a complicated case. It was a typical negligence action, and no unique legal points were involved. It is true that the theories of how the accident occurred were in conflict, but we see nothing about the case that should make the instructions so lengthy, involved and repetitious. The wise trend of the courts of this State is definitely against such instructions. Baker v. Thompson, 337 Ill. App. 327, and the cases therein referred to.

" 'It is not proper for a party to a lawsuit to ask a witness to repeat eight or nine times a bit of evidence that is favorable to the interrogator for the purpose of impressing that fact upon a jury, and by the same token a jury should be told once only about each proposition of law. To do otherwise will lead to a contest between the litigants to see how often they can repeat that which seems favorable to their cause.

" 'We are fully in accord with the view expressed in Baker v. Thompson, supra, and feel that when defense attorneys in negligence actions tender an excessive number of instructions, filled with repetition and containing many of a peremptory nature, they do so at their own peril in the event the case is reviewed. Such

instructions cannot aid the jury members, but rather will hinder them in the performance of their duty of giving to each side a fair and impartial trial.' " And the court continuing, said: "This case was decided in 1950. Since that time our Appellate Courts in the other Districts have similarly condemned the practice of giving an inordinate number of instructions peremptory in form. Stone v. Warehouse & Terminal Cartage Co., 6 Ill.App.2d 229; Schacht v. Elliott, 345 Ill. App. 302; Loucks v. Pierce, 341 Ill. App. 253; Triolo v. Frisella, 3 Ill.App.2d 200; Moore v. Daydif, 7 Ill.App.2d 534.

"The warning contained in these decisions has not been heeded by many counsel who still seem to believe that in order to fulfill their duty to their client it is necessary that they overwhelm the trial court with a plethora of instructions peremptory in form. It would seem that many counsel have not as yet fully grasped the fact that the purpose of giving instructions is to enlighten the jury and not to create confusion. A constant repetition by the court in its instructions to the jury of the peremptory demand that under certain circumstances they shall find for one party or the other may cause the jury to believe that the court has taken a definite stand upon the issues involved in the lawsuit. There is such a thing as a litigant being instructed out of court. Under the facts and circumstances in the case before us the court erred in giving the eight peremptory instructions which are objected to."

 The cases cited on this point are all in agreement that the giving of too many peremptory instructions constitutes error, but there is no hard and fast rule laid down, nor could one be laid down. Each case, must of necessity, rest upon its own facts, and what would constitute error in one case, might not be error in another. In this case the court gave twelve instruc-

tions for the defendant Morris. The defendant Hoagland contends that four of these were peremptory in nature, namely 2, 3, 4 and 6. We are not prepared in this case, to hold that these four are sufficiently repetitious to warrant reversal. Instruction No. 2 defines and sets out the necessary elements of proof required of the plaintiff on the negligence count. Instruction No. 3 defines and sets out the necessary elements of proof required of the plaintiff on the wilful and wanton count. Instruction No. 4 is not too peremptory in form, but sets out that if the jury believe that the plaintiff is not entitled to recover from the defendant Morris, the question of damages should not be considered. Instruction No. 6, tells the jury that if they find and believe from the evidence that the injuries of the plaintiff were proximately caused by the negligence or wilful and wanton conduct of the defendant Hoagland, and were not caused by the negligence or wilful or wanton conduct of the defendant Morris, they should find the defendant Morris not guilty. It is possible to have combined Instructions No. 2 and 3 of defendant Morris, but to have done so would have made a very long and involved instruction, and since the elements of each are dissimilar, we can see no objection to the defendant tendering and having given an instruction on negligence and one on wilful and wanton conduct.

Proposition III of the defendant-appellant complains of certain instructions of the plaintiff, No. 1 and 7, and of the defendant-appellee Morris, No. 7 and 12, on the grounds that they are abstract instructions. Our courts have held that an instruction which merely states some abstract principle, sharply and unduly emphasizing some general right, which is not directly in issue, is erroneous. Garvey v. Chicago Rys. Co., 339 Ill. 276; Baltimore & Ohio S. W. R. Co. v. Fox, 113 Ill. App. 180; Burke v. Zwick, 299 Ill. App. 558; Cloudman

v. Beffa, 7 Ill.App.2d 276. But an examination of the instructions complained of show that while some parts of them might be abstract so far as this case is concerned, in the main they present questions that are in issue in this case. Proposition IV contends that defendant Morris' Instruction No. 12, was an incorrect statement of the law, and therefore error. The instruction dealt with the law governing a driver approaching the crest of a grade or upon a curve in the highway, as set forth in Section 155 of Chapter 95½, Illinois Revised Statutes. This accident occurred in 1952. The Legislature in 1953 amended the section by adding the following words: "where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction." Defendant Morris' Instruction No. 12 was an incorrect statement of the law, while Plaintiff's Instruction No. 7 was a correct statement. Defendant-Appellant relies upon the case of Enright v. People, 155 Ill. 32. In that case one instruction correctly stated the law, and another instruction incorrectly stated the law. The court in that case, holding that it could not determine which instruction the jury followed, held the giving of an incorrect instruction to be prejudicial error. The Enright case was quoted with approval in the case of People v. Novick, 265 Ill. 436; People v. Harvey, 286 Ill. 593; People v. Miller, 403 Ill. 561. But a reading of these cases discloses that the incorrect instruction dealt with a matter where the evidence was conflicting. That is not the case here. There is nothing in the evidence here as to the passing by Morris, that the instruction could in any way mislead the jury or that the jury could have followed and determined a disputed matter. The defendants offered no evidence to present a conflict, except the introduction of the map, showing a curve of the highway. We do not believe the jury could have been or was misled

by the giving of defendant Morris's Instruction No. 12 to the extent that the giving of the instruction was reversible error in this case.

Proposition V of the defendant-appellant complains that the name of the defendant Morris was mentioned nineteen times in the instructions and that of the defendant Hoagland only seven times. The case of Alexander v. Sullivan, 334 Ill. App. 42 is cited in support of this proposition, but we cannot find anything in that decision that would support the defendant-appellant's position. The defendant-appellant did not complain of failure of the trial court to give any of her instructions, and consequently cannot contend at this time, that the action of the other defendant in giving instructions for his side, where his name was mentioned and the name of the defendant-appellant was not mentioned would be error. We see no merit in this proposition.

Finally, Proposition VI of the defendant-appellant contends that opposing counsel misquoted evidence and that this was prejudicial to the rights of the defendant-appellant. The misquotation was as to the distance the Hoagland car traveled after it left the pavement until it hit the embankment in the ditch. There does not seem to be much question that counsel misquoted the evidence as to the distance, confusing the distance the Hoagland car traveled on the shoulder with the complete distance it traveled from the time it left the paved highway until it hit the embankment, which was about 100 yards. Counsel for defendant-appellant objected to the statement, but the record fails to disclose any ruling or instruction by the court. Under the authority of Andres v. Green, 7 Ill.App.2d 375, the defendant-appellant, by failing to move to withdraw a juror, waived the error and cannot complain of it at this time.

499

The remaining matter to be considered is the motion of the defendant-appellee Morris to dismiss the appeal as to him. Our decision as to Proposition I of the plaintiff-appellant disposes of this matter. The cases cited namely Postal Telegraph-Cable Co. v. Likes, 225 Ill. 249; Chmielewski v. Marich, 2 Ill.2d 568 and Humason v. Michigan Cent. R. Co., 259 Ill. 462, are conclusive authority that the defendant-appellant has no right to appeal the verdict and judgment of not guilty as to Morris.

There appears to be no reversible error in this record and the judgment of the Circuit Court will be affirmed.

Affirmed.