Thomas L. McNeff and Joseph W. McNeff, Trading as McNeff Brothers, Appellees, v. White Eagle Brewing Company, Appellant.

Gen. No. 39,315.

Opinion filed February 28, 1938. Rehearing denied March 14, 1938 and slightly modified.

SIDNEY J. WOLF and FRANK PESKA, both of Chicago, for appellant.

CAMPBELL, CLITHERO & FISCHER and POPE & BALLARD, both of Chicago, for appellees.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs brought suit to recover damages on account of breach of a contract in which defendant contracted for the purchase from plaintiffs of a quantity of hops. Upon trial the jury returned a verdict for plaintiffs of $2,500; on plaintiffs' motion for judgment notwithstanding the verdict the court entered judgment against defendant for $11,362, from which defendant appeals.

Plaintiffs are engaged in the business of growing hops on the Pacific coast, and they make contracts with other growers for their crops; through a Mr. Moerke in Chicago they entered into negotiations to secure from defendant orders for hops, and on August 21, 1933, three contracts were executed by the parties, the first calling for delivery by plaintiffs to defendant of

500 bales of hops of the 1933 crop; the second contract was for the same amount of the 1934 crop; and the third for the same amount of the 1935 crop; shipments to be made during October and November in each year. The first shipments under the first contract were made about September 15, 1933; apparently defendant then concluded that the contract called for more hops than it required, and in January, 1934, Joseph McNeff, one of the plaintiffs, came to Chicago and had an interview with Mr. Gorecki, president, and Mr. Krypel, a director of defendant; they told Mr. McNeff that defendant was financially unable to go through with the original contracts; that they had had bad luck with some of the beer, which had gone sour on account of leaky vats; they proposed that new contracts be made, which defendant in a letter said were to "supplement" the three contracts of August, 1933—these new contracts to cover 300 bales of hops a year instead of 500 as called for by the prior contracts, and to include the yearly crops from 1934 to 1937 inclusive. This was agreed to and the several contracts were executed. These contracts were dated January 27, 1934, although they were not signed until February 20th.

In the first contract, which is the subject matter of this suit, defendant agreed to pay 53 cents a pound, 12 bales of hops to be delivered weekly. On this contract only one shipment was accepted by defendant after the contract was signed on February 20th. May 3rd defendant told Mr. McNeff that they would not receive any more hops except the 5 bales delivered on that date; June 2, 1934, defendant, through Mr. Gorecki and Mr. Krypel, told Mr. McNeff that they would take no more hops, to which Mr. McNeff replied that plaintiffs would expect defendant to live up to its contract, to which the officials replied that it could not do so as the market had declined, but that they would take hops if plaintiffs would deliver them at the market

price; that they would pay only the market price. Plaintiffs introduced evidence to show that on June 2, 1934, the market price was 30 cents a pound, although defendant introduced evidence tending to show that the market price was about 28 cents a pound.

Defendant first argues that the verdict of the jury is a compromise verdict and should be set aside, citing *Selamakos v. Victory Ice & Ice Cream Co.*, 246 Ill. App. 178, 181, 182, and other cases. Undoubtedly this is the general rule, applicable to all cases where disputed questions of material facts are submitted to a jury for determination. At the request of plaintiffs, without objection from defendant, the court instructed the jury that if it should find that plaintiffs were entitled to recover, the damages would be the difference between the contract price and the market price in Chicago at the time defendant refused to accept deliveries. Having found defendant liable for breaching its contract the jury should have, by simple computation, estimated the damages at the difference between 30 cents a pound, the market price, and 53 cents a pound, the contract price, or 23 cents a pound; multiplying this by the number of pounds—49,400—which defendant refused to take, amounts to $11,362, the amount of the judgment. As defendant refused on June 2, 1934, to accept any more shipments of hops on its contract, the question then is, Were there any facts from which the jury could properly conclude that defendant was legally justified in this refusal?

Both the prior contracts of August, 1933, and the instant contract provide, "Samples to be submitted to White Eagle Brewing Co., Inc. for selection." Defendant argues that plaintiffs breached this contract by failing to submit samples to defendant, as required by the contract. Under the prior contract plaintiffs furnished samples of the 1933 crop which were accepted by defendant. When the present contract was

actually signed, February 20th, it was dated back to January 27th to cover the 48 bales already delivered, of which samples had been submitted and approved by defendant, and there is no denial that all of the hops delivered and tendered were part of the two carloads shipped and then in the Chicago storage warehouse, of which defendant had approved samples. There is seemingly no contention that defendant was entitled to have samples submitted with every week's delivery. The contract was for the sale of 300 bales of hops and the samples submitted and accepted were from these hops.

Moreover, in the considerable correspondence between the parties defendant never once assigned as a reason for its failure to take the hops that it had not been furnished with samples. Mr. Gorecki, defendant's president, testified that the reason it could not take the hops was because defendant ''could not stand that for such a big amount of hops because we don't need it at once, and we take a small portion.'' The only evidence with reference to samples is that of an employee of defendant, a young lady who testified that on two occasions she told the truck driver delivering hops that they would not take them because no samples had been furnished, although the truck driver testified that he had never talked with the woman. A reasonable construction of the contract calls for the submission of samples only when a different lot was delivered. The lot tendered was part of the same lot of which samples had already been submitted and approved. There was no disputed evidence for the jury to weigh and determine as to the submission of samples.

There was some evidence presented by defendant that some barrels of beer made with hops supplied by plaintiffs turned sour, but there was no evidence that this was because of the kind of hops used. The brew master for defendant testified that the hops furnished

by plaintiffs were good hops and that he never had any trouble with them nor complaint about their quality, and that no beer was spoiled by reason of them; that the beer was spoiled because of the smell from an old sewer, of which he complained to defendant's president. This witness testified that hops had nothing to do with souring beer. Another employee of defendant, who did the mashing and putting the hops in the brewing kettle, testified that the hops furnished by plaintiffs were fine hops; that he never heard any complaints of them and never heard it was possible for hops to make beer sour. Also, an expert chemist for the brewery trade testified that sour beer was not caused by hops but from other sources.

Defendant's counsel say that the refusal of a vendee to accept goods tendered does not *per se* create a breach unless the vendor elects to consider the breach as a termination of the contract, and the argument seems to be that it was for the jury to pass upon the question whether plaintiffs had accepted defendant's refusal to take the hops, and if the jury should conclude that plaintiffs had not done so, then the law is that plaintiffs must be held to have elected to keep the contract alive and therefore were bound to continue making weekly tenders of deliveries.

Regardless of the question of law thus presented, the evidence shows without contradiction that on May 23, 1934, plaintiffs' attorneys wrote defendant to the effect that unless by June 2, 1934, defendant indicated its willingness to accept deliveries of hops under the contract, defendant's conduct "will be regarded as an entire repudiation of your obligations under the contract, and we shall proceed accordingly." This clearly was notice to defendant that plaintiffs would consider the contract terminated on the date mentioned. It is well settled that where one party refuses to be bound by a contract the other party may, at his election, treat the

repudiation as putting an end to the contract and sue for the profit he would have realized if he had not been prevented from performing. *Lake Shore & M. S. Ry. Co. v. Richards*, 152 Ill. 59, 80; *Roebling's Sons' Co. v. Lock Stitch Fence Co.*, 130 Ill. 660; *Alvey-Ferguson Co. v. Ernst Tosetti Brew. Co.*, 178 Ill. App. 536, 543; *Reskic, Kirshbaum & Co. v. Walzer*, 213 Ill. App. 305; *Consolidated R. & C. Co. v. Crane Co.*, 183 Ill. App. 392, 394. It follows from these considerations that there were no disputed questions of fact to be determined by the jury.

It is argued that since plaintiffs in their bill of particulars, filed with their complaint, set their damages at $9,800, recovery must be limited to this amount. Undoubtedly this is the general rule. *Hess Co. v. Dawson*, 149 Ill. 138, 144, 145. On oral argument counsel for plaintiffs stated that upon the trial the bill of particulars was wholly forgotten or ignored. Plaintiffs should have asked leave to amend the bill of particulars so as to correspond with the judgment they asked to have entered. And even in this court the bill of particulars may on motion be amended. Sec. 92, Practice Act, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.092]. We hold that if the amount of the judgment is proper, the fact that it exceeds the amount claimed in the bill of particulars does not require a reversal.

We do not give assent to plaintiffs' proposition that where both parties join in a motion for judgment notwithstanding the verdict, this amounts to a waiver of a trial by jury, although *Hungate v. New York Life Ins. Co.*, 267 Ill. App. 257, 263, and *Sumner v. Smysor*, 273 Ill. App. 588, 592, so decided. These cases involve motions for directed verdicts. No such motions were made in the instant case. Moreover, in *Wolf v. Chicago Sign Printing Co.*, 233 Ill. 501, it was definitely held that a motion to direct a verdict raises only a question of law, and this rule has not been changed by

pars. 192 and 248 of the Practice Act, which provide that a jury trial shall be waived unless one of the parties requests in writing a jury trial.

Was it proper to figure the amount of damages on the basis of the difference between the market price of hops on June 2, 1934, the date of the breach, and the contract price? This question received extended treatment in three cases, all involving contracts for the sale of hops, *Horst v. Roehm*, 84 Fed. 565, *Roehm v. Horst*, 91 Fed. 345, and *Roehm v. Horst*, 178 U. S. 1. In the last court Mr. Chief Justice Fuller, after a most elaborate discussion, concludes that under circumstances like those now presented plaintiff could immediately sue upon the breach of the contract. The facts in that case were almost identical with the case at bar, involving contracts for the sale and delivery of hops, a declining market price and the refusal by the defendant to accept further deliveries. It was proper to estimate the damages, based upon the breach of the contract on June 2nd.

It is also in evidence that 152 bales of hops which plaintiffs tendered to defendant were sold to other parties at prices ranging from 24 cents to 30 cents a pound.

Some criticism is made of statements by plaintiffs' counsel in argument to the jury with reference to the failure of defendant to produce as witnesses the attorney for defendant, who apparently supervised the execution of the new contracts, and Mr. Krypel, a stockholder and director of the defendant company. Their absence as witnesses was a legitimate subject of comment and there was no error in this respect.

In arriving at the amount of judgment to be entered the correctness of the computation is not questioned. We have, therefore, the case where no material questions of fact are in dispute, and the court is requested to compute the amount of damages correctly and to

enter judgment for the proper amount. We hold that the order entered by the court is the only order that the record shows could properly be entered. The judgment is therefore affirmed.

*Affirmed.*

O'Connor, P. J., and Matchett, J., concur.