Lawrence Chevalier, Appellee, v. Chicago Transit Authority, Appellant.

Gen. No. 44,255.

Opinion filed June 20, 1949.   Released for publication July 18, 1949.

WERNER W. SCHROEDER, WILLIAM S. ALLEN, FRED J. O'CONNOR, and ARTHUR J. DONOVAN, all of Chicago, for appellant.

JOSEPH P. POWER, MARION J. HANNIGAN, and LEO S. KARLIN, all of Chicago, for appellee; LEO S. KARLIN, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff sued to recover for injuries alleged to have been sustained as a result of a fall while a passenger in a streetcar on January 20, 1946, on Chicago avenue at State street in Chicago. From a judgment on a verdict for $25,000, defendant appeals.

Plaintiff contends that he boarded the westbound Chicago avenue streetcar at State street, having paid his fare, and while standing on the rear platform there was a bright flash and the car gave a violent jerk, as a result of which he was thrown to the floor of the streetcar.

Defendant contends that the plaintiff boarded the car in such a state of intoxication as to require assistance; that shortly after boarding the car the trolley came off of the overhead wire, causing the car to come to a stop; that the conductor left the car to replace the

trolley and when he got back in the car he found the plaintiff lying on the floor; that there was no sudden jerk of the car or untoward incident of any kind in connection with the stopping of the streetcar to account for plaintiff's fall.

The plaintiff was uncorroborated in his testimony as to the facts of the accident, and the conductor and the motorman who testified for the streetcar company were without further corroboration. The question of liability hinged strictly upon the proposition as to whether or not the plaintiff was caused to fall by the claimed sudden jerk of the car or whether or not the fall was occasioned by causes beyond control of the company.

The question of plaintiff's injuries was vigorously contested. Plaintiff claimed that as a result of this accident he had suffered a compression fracture of the fourth lumbar vertebra which caused it to be collapsed; that as a result of such injury he had suffered a definite impairment in the function of his feet, walking with a sort of slapping motion; an atrophy or thinning of the muscles of both legs; instability or a loss of equilibrium when he attempted to stand and an interference with normal bowel movements; that as a result of the accident extensive surgery was required which consisted of removing the lamina or covering of the spinal cord on the third and fourth lumbar vertebrae, applying heat with a sponge to the portions thus bared, and removing a pedicle on the right side of one of the vertebrae; that following the operation he wore a cast for several weeks with some improvement, but that the condition which existed at the time of the trial was permanent. Testimony on behalf of the defendant company indicated that in 1936, the plaintiff was in a truck accident in Parsons, Kansas, as a result of which his back was injured and his legs bothered him for some time, necessitating his confinement in a hospital; that he had a toe drop in both feet after that accident;

that there was a claimed fracture of the right transverse process of the first, second, third and fourth lumbar vertebrae. There was testimony that as a result of that accident the drop foot of both legs persisted at least as late as December 1937, when he was examined, and that at that time it was necessary for him to bend his knees in order to balance himself. The testimony also indicated that in 1940, in Topeka, Kansas, the plaintiff fell from a ladder and following this was confined in a hospital for about three months suffering from back injuries; that he was in a body cast to his hips; that at that time the toe drop was present and plaintiff said that he wore leg braces following that accident; that he was in an accident in 1942 and 1943, in each of which cases he was hospitalized; that in 1944, while working at the Ideal Roller Manufacturing Company in Chicago he was in a hospital for 17 days for an injury to his finger and also received treatment for injuries resulting from dropping steel on his foot; that while he was on some steps raising a steel can of oil over his head his feet slipped and he fell to the floor and was taken to St. Anthony's Hospital where a cast was put on from his chest to his hips; that he remained in the hospital for three or four months in this body cast, and in November 1944 went to St. Luke's Hospital where the cast was removed. Dr. Olberg, who examined him at St. Luke's Hospital in November 1944, testified that plaintiff had a partial paralysis in both legs with absent reflexes; a drop foot in walking, diminished sensation in both legs which became marked toward the foot on each side, and according to the patient's statements, sensation was virtually absent in both feet; that this examination revealed an injury to the cauda equina, which is a collection of nerves that come off the end of the spinal cord.

The X-ray pictures which were taken at St. Anthony's Hospital in 1944 were examined by Dr. Horace

Turner on behalf of defendant and by Dr. Donald Miller on behalf of plaintiff. Dr. Turner testified that one of these pictures showed that the transverse process of the first lumbar vertebra was broken off and also that the transverse process of the second vertebra was missing; that there was a compression fracture of the first lumbar vertebra and the body of the first lumbar vertebra was deformed. Dr. Miller testified that the exhibit showed a slight curvature to the left with some compression of the first lumbar vertebra and that the transverse process was separated from the body, and that the rest of the spine appeared to be within normal limits. As to another X-ray picture, Dr. Turner testified that there was shown an abnormal curve caused by a compression fracture of the fourth lumbar vertebra, comminuted in nature; that there was a tilting of the third and fourth, and the transverse process of the right side of the first, second, third and fourth lumbar vertebrae had all been broken off and were out in the soft tissues to the right of the plaintiff's side.

It was the contention of the plaintiff that he had completely recovered from these prior accidents, and, in response to a hypothetical question based upon the theory that there had been a complete recovery, Dr. Miller testified that the condition which he found after January 20, 1946, might or could have resulted from the accident which occurred on January 20, 1946. Dr. Turner's testimony was to the effect that an examination of the various pictures shows no recent trauma in the lumbar spine but that the conditions portrayed all existed prior to the accident of January 20, 1946. There was also considerable evidence to the effect that the plaintiff had a long record of alcoholism and that at the time of the trial he was living in an institution specializing in such treatment.

In this state of the record, where both the question of liability and proximate cause of the injuries were extremely close, it was extremely impor-

tant that the jury be accurately instructed. Plaintiff urges that the question of instructions in this case was not preserved for review. His contention is based upon the fact that the motion for a new trial did not specify among the written grounds any errors in instructions. It appears that at the time the motion for a new trial was filed two separate instruments were presented to the trial court. One was entitled "Motion for Judgment Notwithstanding the Verdict and in the Alternative Motion for a New Trial" and the second "Exceptions to Instructions." The caption of the case appeared in both instruments. Both, according to the record were filed at the same time and place, and notice was served upon counsel and service accepted within the statutory time for filing a motion for new trial, to which was attached a motion for judgment notwithstanding the verdict and for a new trial and the exceptions to the instructions. It is no longer necessary to object or except to the giving or refusing of instructions, and the approved practice is to set out under the heading "Motion for New Trial" all the grounds relied upon. We do not believe that the procedure adopted by defendant is in accordance with the best practice. However, as neither court nor counsel was in any manner prejudiced by the procedure adopted, and considering that the exceptions to instructions were before the court, inasmuch as the trial judge certified that they were part of the proceedings before him, when the motion for a new trial was argued, it is obvious that they were intended and understood to be one of the grounds urged for new trial. Under the circumstances, we feel that the present objections are of form rather than of substance and that substantial justice will best be served by a consideration of the proscribed instructions, particularly plaintiff's instruction 18 which is as follows:

"The court instructs the jury that the defendant was a common carrier of passengers and was required

to do all that human care, foresight and prudence could reasonably do consistent with the character and mode of conveyance adopted in the practical operation of the road to prevent accidents to its passengers; and if the jury believe from the evidence that the plaintiff was at and prior to the time of the accident in question a passenger of the defendant and in such a state of intoxication that he was unable to exercise care for his own safety and that the condition of plaintiff, if he was in that condition, was known to the defendants and that the defendants then and there failed to exercise the highest degree of care, foresight and prudence consistent with the practical operation of its road and the character and mode of conveyance adopted for the safety of plaintiff and that as a direct result of such negligence of the defendant, if any, plaintiff received injuries, and that plaintiff exercised ordinary care for his own safety, if any, as alleged in the complaint and proven by a preponderance of the evidence then you should find the defendant guilty.''

The first objection to the instruction is that in its separate parts it is self-contradictory. The jury are in effect instructed that if they believed the plaintiff was at and prior to the accident in question in such a state of intoxication that he was unable to exercise care for his own safety and that the defendant was aware of that condition, if it existed, and failed to exercise the highest degree of care for his safety and that as a result of defendant's negligence, if any, plaintiff received injuries, *and that plaintiff exercised ordinary care for his own safety, if any,* etc., then they should find the defendant guilty. The jury are instructed as to defendant's liability in the event they found plaintiff unable to exercise ordinary care, but the requirement as to what the defendant must do in such event is predicated upon the further finding that plaintiff was exercising ordinary care for his own safety at the time. The instruction is most confusing

and on its face contradictory. Furthermore, we feel that a jury might well have concluded from a reading of this confusing instruction and under the facts in this case that a less degree of care is required to be exercised by an intoxicated person than is required of a sober person. Such is not the law. *Keeshan v. Elgin, A. & S. Traction Co.*, 229 Ill. 533. In *South Chicago City Ry. Co. v. Dufresne*, 200 Ill. 456, it is said (pp. 463, 464):

". . . While voluntary intoxication does not constitute negligence in law, proof of the fact is competent to be considered in determining whether the person was taking that care for his safety which a reasonably prudent man who was sober would take under the same circumstances. . . .

"Again, the instruction was objectionable as being open to the construction that plaintiff might recover, though intoxicated, if he was using such care as a prudent person ordinarily exercises under the same circumstances, including the fact of his intoxicated condition. The hypothesis of fact stated in the instruction was, that the plaintiff was under the influence of liquor or intoxicated, and under the instruction that was one of the things attendant upon the event of his losing his footing and falling from the car. The instruction did not require him to use that degree of care which a person of ordinary prudence and caution, in the full possession of his faculties, would exercise,— and that was the degree of care demanded by the law. If the plaintiff, by intoxication, exposed himself to danger and received his injuries for the want of such care as a reasonably prudent person would have exercised if sober, he would be guilty of contributory negligence. Mere intoxication will not relieve a person from the responsibility of avoiding danger in attempting to get on a street car, to the same extent as if he had been sober. The rule is that voluntary intoxication will not excuse a person from such care as may

reasonably be expected from one who is sober. (*Toledo, Peoria and Warsaw Railway Co. v. Riley,* 47 Ill. 514; *Chicago, Rock Island and Pacific Railroad Co. v. Bell,* 70 id. 102; *Illinois Central Railroad Co. v. Cragin, supra; Fisher v. West Virginia and Pittsburgh Railroad Co.,* 42 W. Va. 183 (33 L. R. A. 69); 3 Thompson on Negligence, sec. 2935.)''

■■ While it is true that if a person is so intoxicated as to be in a helpless condition, of which condition defendant has knowledge, and he is so accepted as a passenger, then if an injury is received by such person as a proximate result of defendant's negligence, the pre-existing condition of intoxication cannot be considered as an element demonstrating contributory negligence. This, in effect, was the holding in *Panor v. Northwestern El. R. Co.,* 228 Ill. App. 162. In the instant case, however, there was no evidence that plaintiff was intoxicated to such a degree as to be completely helpless. The plaintiff himself maintains that he was not intoxicated and that he was in the exercise of all due care and caution for his own safety. The defendant did not contend, nor was there any proof, that the plaintiff was so intoxicated as to be unable to support himself while standing in the rear of the streetcar holding on to the rail. This being so, the instruction was erroneous—not being based on any facts in evidence. *Wilcke v. Henrotin,* 241 Ill. 169, 173. Since the cause must be retried for the error in submitting this instruction, we do not consider it necessary to pass on the further questions raised. The judgment of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

Feinberg, P. J., concurs.

Niemeyer, J., specially concurring: I concur in the result but not for the reasons assigned.

On March 20, 1947, defendant served notice of the filing of a ''written motion for a new trial non obstante

veredicto," to which was attached a paper entitled "Motion for Judgment Notwithstanding the Verdict, and in the alternative, Motion for a New Trial," which is a motion for a judgment notwithstanding the verdict in the usual form, and then an alternative motion asking the court "to set aside the verdict returned by the jury in this cause and the judgment entered therein, and to grant a new trial" in which thirteen grounds for a new trial were assigned, none of which relates to or in any manner refers to the alleged error of the court in giving, refusing or modifying any instructions. Attached is a second instrument entitled "Exceptions to Instructions" in which five separate objections to the giving, refusing and modifying of the instructions are stated. There is no reference in the latter instrument to a motion for a new trial or to the granting of a new trial. There is nothing in the record to indicate that these objections were ever brought to the attention of the trial court or argued before the trial court. Having filed a written motion for a new trial without assigning error in the giving or refusing of instructions, such error is waived. *People v. Downen,* 374 Ill. 146, 151; *Cochran v. Koller,* 310 Ill. App. 91. The trial court must be given an opportunity to pass upon the objection and correct the error, if any, before it can be urged on appeal, and the mere filing of a paper without bringing it to the attention of the trial court is not sufficient to make it a motion for a new trial. *The Morse Co. v. Eaton,* 91 Ill. App. 411. If the objections stated in the "Exceptions to Instructions" were argued as part of a motion for new trial, the record should show that fact. The burden of preparing a proper record is on appellant.

I believe, however, that the judgment should be reversed and the cause remanded because the evidence as to liability is extremely close, depending wholly upon the uncorroborated testimony of plaintiff, and the damages awarded are so excessive as to indicate that the

jury was influenced by prejudice, passion, or a misconception of the evidence which may have entered into the question of liability. *Roedler v. Vandalia Bus Lines, Inc.,* 281 Ill. App. 520.