GEORGE ASH *et al.,* Plaintiffs-Appellees, *v.* ARTHUR M. BARRETT, JR., Defendant-Appellant.

(No. 70-180; 

Second District—September 27, 1971.

Allan I. Wolff, Jr., of Chicago, for appellant.

John F. Grady, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This suit involves the proposed rental of a house owned by defendant. After a lease was signed, defendant refused possession to the plaintiffs and an action for breach of contract was instituted. The court, in a bench trial, awarded plaintiffs $11,984.36 in compensatory damages and $5000 in punitive damages.

Defendant, on appeal, contends (1) he accepted plaintiff's repudiation of the executory contract thereby rescinding the contract, (2) compensatory damages awarded included items which could not have been reasonably anticipated at the time of the breach, and (3) the punitive damage award was improper.

All negotiations concerning the rental were carried on through a realtor. During the course of these negotiations, a dispute arose concerning three items: inclusion of a refrigerator, extension of the lease period, and a provision for lawn care. Due to the nature of the issues it is necessary to describe the negotiations in some detail.

In April, 1968, the plaintiffs, George and Sarah Ash, contracted to sell their residence with delivery of possession to be on June 30, 1968. Also in April, defendant decided to rent a house owned by him and arranged with John Channer of John Channer & Associates, Inc. realtors, to list it. The monthly rental was to be $635.00 with lawn care or $550.00 without. On May 9, Tom Bermingham, a salesman for Channer, showed the house to plaintiffs. They liked it immediately and decided to rent it. Ash noticed the house contained certain household appliances, including stereophonic equipment, and asked which of these items were included in the lease. Bermingham did not know. Later that afternoon, at Channer's office, Ash told Channer he wanted to rent the house with lawn care and tendered a $1000.00 check.

On May 12, Channer notified defendant of the lease negotiations and took copies of the lease, which plaintiffs had signed, to defendant for signature. Defendant and Channer determined which of the personal property was to be included and defendant's wife typed a description of

this property on the lease. The refrigerator in question was not included. That evening Bermingham took the leases to the plaintiffs, they initialed the changes, and wrote a check for $635.00, the month's rental including lawn care.

At this point all parties agree there was a valid lease. However, the next morning Ash noticed that the lawn care provision had been omitted. The plaintiffs contacted Bermingham to correct the error. Thereafter, an ensuing series of conversations between plaintiffs and the realtor and defendant and the realtor resulted in defendant's decision to withhold possession.

Bermingham testified that when he arrived at the office the morning of May 13th, he was given a message to call Ash. Upon calling, Ash, in a loud voice, told him that the lawn care provision had been omitted and he wanted the lease extended from May 15, 1970, to June 30, 1970. Bermingham made a memo of the conversation which read "5/13/68. Mr. Ash wants lease extended to June 30, 1970 (additional six weeks) Also wants yard maintenance included in written lease. (signed) Tom." Since he was leaving on vacation the next day, Bermingham went to plaintiff's house, picked up the lease and gave it, along with the memo, to Channer to arrange the changes. While at plaintiff's house, he talked with Mrs. Ash who said it would be more convenient if the lease were extended so they would not have to move while their children were still in school. Bermingham had no further connection with the dispute. On cross-examination he stated that he did not remember any discussion about a refrigerator at the time he showed plaintiffs the house and no mention of any statement by plaintiffs regarding a refrigerator was made during telephone conversations.

Channer testified that when he and defendant inspected the house defendant was definite about the refrigerator not being included. After Bermingham left, Channer had several telephone conversations with Ash during which Ash insisted the lease be extended, the lawn care provision be included and that Ash said "The refrigerator goes with the house or it's no deal". Channer, after one of the calls, wrote "Kitchen refrig (stays)" on the Bermingham memo. On May 15th, Channer called defendant and explained what he thought were Ash's demands. The defendant said "If that's the way he feels about it, forget it. There is no deal." That afternoon Channer and his lawyer met with defendant. At the meeting defendant again stated that he did not want to rent the house giving as his reasons the extension of the lease, the refrigerator and the fact that his father was ill, and if something happened to him, he wanted the house for his mother. That evening Channer called Ash and advised him of defendant's decision. Ash immediately said "We

don't care about the refrigerator. . . Get me the house". During the next few days Ash repeated, several times, that they would take the house on the original terms.

Defendant, testifying on his own behalf and as an adverse witness, agreed that the lawn care provision was omitted in error, that he told Channer on the telephone the deal was off and that at the meeting he again refused to go ahead with the agreement. He added that he later was aware of plaintiff's desire to take the house under the original terms, that plaintiffs had formally demanded possession by telegram and that the house remained vacant during the next few months.

Ash testified he only suggested, not demanded, that the lease be extended when he talked to Bermingham. He described the telephone conversations as "a lot of wrangling" and flatly denied ever telling Channer that the inclusion of the refrigerator was a prerequisite to their taking the house. He testified further to his willingness to take possession under the original lease and his repeated demands for possession.

Mrs. Ash testified that when Bermingham picked up the lease to insert the lawn care provision they talked about extending the period of the lease. She told him it would be nice but it would not make a difference if defendant did not wish to extend the term. She stated that the only time the parties discussed the refrigerator was during the inspection of the house, that they owned two refrigerators along with a freezer and would not have need for another one.

During May and June, plaintiffs advertised, without success, for rental housing. On June 28th they moved out of their house and stored their furniture. Plaintiffs checked with various motels in the area and rented two rooms in the least expensive one. For the next 100 days plaintiffs, their six children and their dog lived in these rooms. The motel provided no kitchen facilities so the family ate their meals in restaurants. During this period they continually searched for a house but found none. On August 10th they rented a house which was under construction with possession to commence after September 15th. On October 5th they moved into the home.

We first consider the contention concerning the repudiation of the contract by plaintiffs. On this point it is argued that the judgment was erroneous as a matter of law, or alternatively, that it was against the manifest weight of the evidence.

The testimony reveals that there was no direct conversation between plaintiffs and defendant. Instead all negotiations were conducted through the realtor. Defendant claims that plaintiffs' telephone conversations with Bermingham on May 13th was a repudiation. However, Bermingham's memo, made minutes after the call, together with his

418

testimony demonstrates that all plaintiffs requested was the addition of the lawn care provision (which all parties agreed should have been included) and defendant's consideration regarding extension of the lease. This did not amount to an intent on the part of the plaintiffs toward nonperformance under the original agreement, thus, there was no repudiation.

The remainder of the evidence concerns the acts of the parties and the various conversations Ash and defendant each had with Channer. The evidence relating to these conversations was, in part, conflicting and contradictory: Ash testified that he never mentioned the refrigerator to Channer; Channer asserted Ash had said, if the refrigerator was not included, the deal was off; defendant's statement to Channer of no deal; defendant's statement that he wanted to keep the house vacant for his mother; plaintiffs immediate and repeated demands for possession; and defendant's admission that the house remained unoccupied during the entire period.

Whether a repudiation occurred was a question of fact to be resolved by the trial court from the evidence presented. Especially where the evidence is conflicting, its decision should not be disturbed unless the holding is against the manifest weight of the evidence. *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill.2d 352, 356. Manifest means: clearly evident, clear, plain or undisputable. *Elgin Lumber & Supply Co., Inc. v. Malenius* (1967), 90 Ill.App.2d 90, 97.) A review of this record leads to the conclusion that the decision of the trial court is neither incorrect as a matter of law or as being against the manifest weight of the evidence.

Defendant next contends that the compensatory damages awarded were not the type that could be reasonably anticipated. The court heard extensive testimony regarding plaintiffs' search for housing, motel accommodations and meal expenses. The award made allowances for such items as the amounts the plaintiffs' would have spent on rent, meals and other purchases had there been no breach. We find that the items allowed were of the nature which could have been reasonably anticipated by the defendant.

Finally, defendant contends that the award for punitive damages was improper. Plaintiffs amended their complaint several times during the course of trial in an attempt to conform their allegations to the rule applied in some jurisdictions. The rule being that punitive damages are permissible in exceptional cases for a breach of contract when the breach amounts to an independent willful tort. 22 Am.Jur.2d, Damages, Sec. 245. Here, the breach was evidenced by the defendant's refusal of possession knowing that plaintiffs were living in a motel together with

defendant's willfully allowing the house to remain vacant. Both events occurred after the breach. This, in our opinion, does not make an unusual case for breach of contract and was properly remedied by compensatory damages.

■ The rule in Illinois is that in an action for breach of contract there can be no claim for punitive damages. *Hayes v. Moynihan* (1869), 52 Ill. 423, 426.

The judgment of the trial court awarding compensatory damages in the sum of $11,984.36 is affirmed but the judgment for punitive damages in the sum of $5000.00 is reversed.

Affirmed in part and reversed in part.

SEIDENFELD, and GUILD, JJ. concur.