HAROLD A. LEDINGHAM *et al.,* Plaintiffs-Appellees, *v.* BLUE CROSS PLAN FOR HOSPITAL CARE OF HOSPITAL SERVICE CORPORATION *et al.,* Defendants-Appellants.

(No. 74-149; 

Fifth District—June 12, 1975.

340

Rφbert F. Kaucher, of Meyer & Kaucher, of Belleville, for appellants.

John Dale Stobbs, of Stobbs Law Offices, Ltd., of Alton, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment entered on a general jury verdict for the plaintiffs in the amount of $9200 and costs in the circuit court in Madison County, Illinois. Suit was brought in three counts, Count I for wilful and wanton conduct requesting both actual and punitive damages, Count II for negligence requesting compensatory damages, and Count III for breach of contract requesting only compensatory damages. Count II was dismissed by plaintiffs during trial, and the case went to judgment on Counts I and III.

Plaintiffs contracted with Blue Cross Plan for Hospital Care of Hospital Service Corporation and Blue Shield of Illinois Medical Service, a corporation, for coverage. Pursuant to an application made after July 15, 1969, a policy was issued with an effective date of August 1, 1969. No physical examination was required of the insureds. The policy contained an exemption for illnesses that occurred within 270 days before the effective date.

Since 1967 Mrs. Ledingham had adopted a health routine of having a gynecological examination and 'Pap Test' each 6 months. She had such test approximately a month before she initiated her search for a health insurer. The results of the test were negative.

However on August 3, 1969, Mrs. Ledingham experienced prolonged and excessive bleeding. After bed rest and medication were prescribed, taken, and failed to produce the cure desired, a diagnostic dilatation and curettage was performed. Her condition stabilized until about September 9, 1969, when she hemorrhaged and was given medication. Her condition again stabilized, and then degenerated again. Finally, on November 25, 1969, a hysterectomy was performed.

Claims for medical and hospital bills, which total $1549.60 were sub-

mitted in proper form and in a timely fashion, but the defendants refused payment on the grounds that the condition from which Mrs. Ledingham suffered was excluded under an exclusion in the policy for preexisting illnesses. No evidence is presented that the defendants' refusal was based on any other reason than a good faith belief that the illness could not have been contracted, and then developed to its severity on August 3, 1969; that is, in 2 days. In the report to the defendants, plaintiffs' doctor stated that he could not be certain whether the condition was preexisting on August 1, 1969, or not. The defendants did not use harsh or threatening language in their refusal to pay on the policy. There was a dispute over whether the condition was preexisting on August 1, 1969, based upon a report of December 5, 1969, from Doctor Morrison to the defendants. In that report the doctor, pursuant to their request, discussed the existence of the two conditions prior to August 1, 1969. He stated that the existence was unknown, that is, not established; that symptoms first appeared after August 1, 1969; and that no treatment for such conditions had been furnished during 1 year prior to August 1, 1969. The defendants presented no evidence at trial, although they asserted the affirmative defense of preexisting condition. No evidence was presented that would tend to establish that, at any time, the defendant companies attempted to use their superior economic position to force any type of settlement. The defendants did not delay the trial of the case.

The issue to be decided in this case is whether punitive damages may properly be awarded in an action brought by a policyholder of a health insurance plan where the insurance company allegedly wrongfully denied benefits to the insured on the basis of a preexisting illness exclusion in the policy. The insurers' basis for denying benefits was the statement by the doctor of the insured that he could not tell whether the illness existed prior to the date of issuance of the policy.

The insurers' contentions are that this insurance policy is just like every other contract, and that the rule in Illinois is that punitive damages are not properly allowed in a suit on a contract. They argue the trial court erred in allowing punitive damages to be assessed in this case. They rely on several recent Illinois cases.

In *Alsip Homebuilders, Inc. v. Shusta*, 6 Ill.App.3d 65, 284 N.E.2d 509, a contractor built a home which did not meet the contract specifications. The contractor failed "* * * to construct and complete, in a good substantial and workmanlike manner, a residence, * * *." The builder also forged the signature of the purchaser on a certificate of acceptance to obtain the mortgage money from the lender. The appellate court held that the trial court erred in allowing punitive damages to be assessed.

The appellate court also refused to allow punitive damages in *Sears*

*v. Weissman,* 6 Ill.App.3d 827, 286 N.E.2d 777, where a corporation sold a bomb shelter to a 75-year-old woman, and then quietly dissolved itself without building the shelter, or in any way meeting its obligation.

Both of these cases rely on *Ash v. Barrett,* 1 Ill.App.3d 414, 274 N.E.2d 149, where the court was dealing with a contract to lease a house. The owner refused to execute the lease, and the lessee sued for compensatory and punitive damages. The court allowed the compensatory damages to stand, but reversed the award of punitive damages. The court said:

> "Finally, defendant contends that the award for punitive damages was improper. Plaintiffs amended their complaint several times during the course of trial in an attempt to conform their allegations to the rule applied in some jurisdictions. The rule being that punitive damages are permissible in exceptional cases for a breach of contract when the breach amounts to an independent willful tort. 22 Am.Jur.2d, Damages, Sec. 245. Here, the breach was evidenced by the defendant's refusal of possession knowing that plaintiffs were living in a motel together with defendant's willfully allowing the house to remain vacant. Both events occurred after the breach. This, in our opinion, does not make an unusual case for breach of contract and was properly remedied by compensatory damages.
>
> The rule in Illinois is that in an action for breach of contract there can be no claim for punitive damages. *Hayes v. Moynihan,* (1869), 52 Ill. 423, 426." 1 Ill.App.3d 414, 418-19.

It is significant that the court in *Ash* did not find that the rule, applied in some jurisdictions, that punitive damages are permissible in exceptional cases for a breach of contract when the breach amounts to a willful, independent tort, was incorrect or misstated the law. They merely stated that on the facts of the case, the plaintiff had not presented "\* \* \* an unusual case for breach of contract."

The courts have pursued this distinction between tort and contract without disapproving of it in *Alsip Homebuilders, Inc.* There the court stated:

> "It is significant that both counts of the counterclaim in this case were based upon the contract. Although Count II of the counterclaim alleges fraudulent conduct on the part of Alsip, the allegations are not those of a tort action. The theory of recovery in Count II is that punitive damages should be awarded because of the willful and malicious conduct that precipitated the breach of contract alleged in Count I.
>
> The general rule requires that punitive damages cannot be recovered in an action for breach of contract. 11 Williston, Contracts,

Sec. 1340 (3d ed. 1968); 5 Corbin, Contracts, Sec. 1077 (1964); McCormick on Damages, Sec. 290 (1935); 70 Harv. L. Rev. 517 (1957); Restatement of Contracts, Sec. 342.

The theory behind this rule rests upon a distinction drawn between compensation and punishment. If the general purpose underlying the law of damages is to promote security and prevent disorder, as Corbin points out, and breaches of contract do not cause as much resentment or other physical or mental discomfort as do wrongs called torts or crimes, then the remedies needed to prevent breaches of contract and satisfy the injured party are not as severe as those needed to punish the tort feasor or criminal. See Corbin, Sec. 1077, *supra.*

Illinois seems to adopt the general rule, but the authority is not extensive. *Hayes v. Moynihan* (1869), 52 Ill. 423; *Ash v. Barrett* (1971), 1 Ill.App.3d 414, 274 N.E.2d 149.

However, a review of the authority in other jurisdictions confirms that the vast majority does not allow punitive damages to be awarded in contract actions. [Citations.]" 6 Ill.App.3d 65, 68-69.

The insurers argue that this is an action upon a contract for insurance and therefore the award of punitive damages was error in view of the above cited authority. Plaintiffs argue that the action was in tort notwithstanding the fact that a breach of an insurance contract was also involved.

■■ It is clear in Illinois that where both a tort and a contract cause of action arise out of the same fact situation, the plaintiff is free to proceed with the theory of his choice. The presence of the cause of action in contract does not preclude an action based upon the tort. This principle is discussed in *Nevin v. Pullman Palace Car Co.*, 106 Ill. 222, 46 Am.Rep. 688. There the plaintiff, his wife, and his niece were refused the use of a berth in a sleeping car without justification. When the plaintiff left the car to get a breath of fresh air, the door was slammed on him, and his baggage and family were then removed to the coach where they had to spend the night. Plaintiff sued in tort and the railroad argued that plaintiff was limited in his cause of action to a breach of contract of carriage and recovery of the ticket fare. The court said:

"[N]othing is better settled than that in many contracts, especially those which establish peculiar relations between the parties, as, those of confidence and trust, the law silently annexes certain conditions, and imposes mutual obligations and duties, which are not all, in express terms, provided for in the contract, yet, in contemplation of law, they are nevertheless regarded as a part of the contract, and the non-performance of them may, in an action on the

contract, be assigned as a breach thereof. But while assumpsit [action on the contract] will certainly lie for a breach of these implied duties, it is equally well settled that case [action on the tort] will lie also. Strictly speaking, these duties arise *ex lege* out of the relation created by the contract. As familiar illustrations of this class of contracts, which give rise to an almost infinite variety of implied duties and obligations, may be mentioned those between client and attorney, physician and patient, carrier and shipper, and, in short, every species of bailment. In all these and analogous cases it is conceded case is a concurrent remedy with assumpsit for a breach of the implied duties growing out of any of these relations.

Now, when we look at the contract between the plaintiff and defendant, the character of the business of the company, the subject matter of the contract, the relations of the parties with respect to such subject matter, and all the circumstances attending the transaction, can it be doubted * * * that the contract falls within the same class of contracts as those between carrier and passenger, and the like?" 106 Ill. 222, 233.

Our question is whether the relationship of a health insurance insurer and a policy holder gives rise to implied duties, the breach of which would be tortious. If breach of a duty implied by the relationship did occur, and was tortious, the question then becomes would punitive damages be justified in this case?

*Ash v. Barrett, Alsip Homebuilders, Inc.,* and *Sears v. Weissman,* were all centered around the building and leasing of shelter of one sort or another. Because there is such a pronounced difference in these cases and the insurance case, we look to other jurisdictions to aid in resolving these questions. Several cases dealing with these questions have been decided by the appellate courts and Supreme Court of California, as well as the Federal Court of Appeals for the Seventh District applying Illinois law.

In *Fletcher v. Western National Life Insurance Co.* (1970), 10 Cal. App.3d 376, 89 Cal.Rptr. 78, the court of appeals found that a breach of a contract for disability insurance could give rise to a cause of action in tort under two theories. The first theory was that the plaintiff had suffered intentionally inflicted emotional harm; the second theory was stated at page 401 where the court said:

"[I]ndependent of the tort of intentional infliction of emotional distress, such conduct on the part of a disability insurer [defendant's threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert

with false and threatening communications directed to plaintiff for the purpose of causing him to surrender his policy or disadvantageously settle a nonexistent dispute] constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate for all detriment proximately resulting therefrom, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages."

It should be noted that the facts of the *Fletcher* case are much more outrageous than those which confront us. In that case the defendant admitted its conduct was outrageous and deplorable. Here the plaintiffs did not argue at trial that the action of the defendant companies constituted "outrageous conduct," nor is there any argument on this appeal that the award of punitive damages be upheld on that theory. Further, in *Knierim v. Izzo,* 22 Ill.2d 73, 174 N.E.2d 157, where the Illinois Supreme Court first applied the doctrine of intentional infliction of emotional distress the court said:

"There remains the question of whether a request for punitive damages in such an action is proper. Whether punitive damages may be assessed in a particular case is properly a question of law. (Smith v. Hill, 12 Ill.2d 588.) Generally such damages may be recovered in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or circumstances of aggravation. (*Eshelman v. Rawalt,* 298 Ill. 192.) The alleged conduct of the defendant in intentionally causing the severe emotional disturbance is characterized by these elements. Indeed it is the outrageous nature of his conduct that forms the basis for the action.

We believe, nevertheless, that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive." 22 Ill.2d 73, 87-88.

Before we examine and compare the facts of our case to those in *Fletcher,* we examine the basis for the second tort theory advanced in that case to see if it should obtain in any event in Illinois. Beginning at page 400 of 10 Cal.App.3d, the court states:

"It is well settled that punitive damages may not be recovered for breach of contract, even if the breach is willful, fraudulent or coupled with evil intent. (*Crogan v. Metz,* 47 Cal.2d 398, 405 [303 P.2d 1029]; see *Wetherbee v. United Ins. Co. of America,*

*supra,* 265 Cal.App.2d 921, 928, and cases there reviewed; Civ. Code, §§ 3300 and 3302.) It has also been held that damages are not recoverable for mental suffering or injury to reputation resulting from breach of contract, although such recovery has generally been denied on the theory that such damages are too uncertain, speculative and remote. (*Westwater v. Grace Church,* 140 Cal. 339, 342 [73 P. 1055]; *Walpole v. Prefab Mfg. Co.,* 103 Cal.App.2d 472, 489 [230 P.2d 36]; but cf. *Westerfelt v. McCullough,* 68 Cal.App. 198, 208-209 [228 P. 734].) Indeed, section 10111 of the Insurance Code provides that 'In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy * * *.'

On the other hand, if the action is one in tort, punitive damages may be recovered upon a proper showing of malice, fraud or oppression even though the conduct constituting the tort also involves a breach of contract. (*Acadia, California, Ltd. v. Herbert,* 54 Cal.2d 328, 336-337 [5 Cal.Rptr. 686, 353 P.2d 294]; *Chelini v. Nieri,* 32 Cal.2d 480, 486-487 [196 P.2d 915] [cited with approval in *Alsip Homebuilders, Inc. v. Shusta, supra*]; *Haigler v. Donnelly,* 18 Cal.2d 674, 680-681 [117 P.2d 331]; *Wetherbee v. United Ins. Co. of America, supra,* 265 Cal.App.2d 921, 928-929; *Sharp v. Automobile Club of So. Cal.,* 225 Cal.App.2d 648, 653 [37 Cal.Rptr. 585].) Likewise, if the conduct is tortious, damages for emotional distress may be recovered despite the fact that the conduct also involves a breach of contract. (*Crisci v. Security Ins. Co., supra,* 66 Cal.2d 425, 432-434; *Acadia, California, Ltd. v. Herbert, supra,* 54 Cal.2d 328, 336-337; *Taylor v. Marine Cooks & Stewards Assn.,* 117 Cal.App.2d 556, 562-563 [256 P.2d 595].) When the case sounds in tort, Insurance Code, section 10111 does not restrict recovery to the amounts due under the policy. (*Wetherbee v. United Ins. Co. of America, supra,* 265 Cal.App.2d 921, 927-929.)

An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. (*Crisci v. Security Ins. Co., supra,* at page 429.) Included within this duty in the case of a liability insurance policy is the duty to act reasonably and in good faith to settle claims against the insured by a third person. (*Crisci v. Security Ins. Co., supra.*) The violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract. (*Crisci v. Security Ins. Co., supra,* at pp. 432-434 [disapproving

*Critz v. Farmers Ins. Group*, 230 Cal.App.2d 788, 799 [41 Cal.Rptr. 401, 12 A.L.R. 3d 1142] to the extent it might be interpreted to the contrary].) We think that, similarly, the implied-in-law duty of good faith and fair dealing imposes upon a disability insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy. We think that, as in *Crisci*, the violation of that duty sounds in tort notwithstanding that it also constitutes a breach of contract. (Cf. also *Ward v. Taggart*, 51 Cal.2d 736, 743, [336 P.2d 534].)"

Illinois finds a similar duty. In *Krutsinger v. Illinois Casualty Co.*, 10 Ill.2d 518, 141 N.E.2d 16, the supreme court said:

"An insurer who undertakes the defense of a suit against the insured, where the damages sought are in excess of policy limits, cannot arbitrarily refuse a settlement within policy limits. And the insured can recover the amount of the judgment rendered against him, including the amount in excess of policy limits, when the insurer has been guilty of bad faith in failing to effect a settlement for a smaller sum. (*Radcliffe v. Franklin National Insurance Co. of New York*, 298 P.2d (Ore.) 1002; *Home Indemnity Co. v. Williamson*, 183 F.2d (C.A. 5) 572; 40 A.L.R.2d 168.)" (10 Ill.2d 518, 527.)

The basis for its decision although not articulated in the same terms the California cases have chosen, appears to us to have been the existence of an implied-in-law duty of good faith, and fair dealing which was the basis of *Crisci v. Security Insurance Co.* in a similar fact situation. Utilizing an analysis much like that articulated in *Nevin v. Pullman Palace Car Co.*, at page 223, the California courts have determined the duty does exist. (See *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App. 376, 402, 403, for further details of their analysis.) Clearly then it seems there is an implied-in-law duty of good faith and fair dealing in California, and we are persuaded the same duty should and does obtain in Illinois.

In *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1 (7th Cir. 1972), the Federal District Court was applying Illinois law when it anticipatorily applied *Fletcher*, to the case before it on the basis of intentional infliction of emotional distress. The court was reviewing a life insurance case where a mother was left penniless and with a family to support when her husband was the victim of a homicide. She did not have enough money for her husband's funeral, and she was forced to accept charity and live with relatives. The court found the insurer knew or should have known of her dire need, and yet repeatedly and deliberately

refused her demands for payment. The court there did not discuss the second theory put forth in the *Fletcher* case, but it did find that the duty of good faith and fair dealing did apply in Illinois, and that breach of that duty could be the basis of tort liability. Significantly the court also stated that some settlement actions are privileged. At page 5 of *Eckenrode* the court said:

> "It is true that settlement tactics may be privileged under circumstances where an insurer has done no more than insist upon his legal rights in a permissible way. But we do not think that a refusal to make payments based on a bad faith insistence on a non-existent defense is privileged conduct against the complaint here."

The basis for the Federal District Court's discussion of privilege in *Eckenrode,* is the *Fletcher* court's discussion at page 395 where it stated:

> "Undoubtably an insurance company is privileged in pursuing its own economic interests, to assert in a permissible way its legal rights and to communicate its position in good faith to its insured even though it is substantially certain that in doing so emotional distress will be caused.  *  *  *  The social utility served by recognition of this privilege is obviously enhanced when the privilege is exercised in connection with settlement negotiations, which are certainly to be encouraged. (See generally Prosser, Law of Torts, *supra,* Privilege, pp. 99-100.)
>
> Nevertheless, the exercise of the privilege  *  *  *  must be done in a permissible way and with a good faith belief in the existence of the rights asserted.  *  *  *"

The California Supreme Court recently had occasion to review the development of *Fletcher* and other cases following it in *Gruenberg v. Aetna Insurance Co.* (1973), 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032. The case involved a fire liability policy; apparently there was some indication that because the building was overinsured before it burned, the owner may have committed arson. The owner was charged with arson and defrauding an insurer, and the action was dismissed for lack of probable cause. It seemed that one of the reasons for the charge in the first place was the insurance adjuster's statements to the police. The California Supreme Court in a thorough review of the cases explained the distinction it found between a bad faith breach of a contract, and a tortious violation of the duty of good faith and fair dealing. The court said at page 573:

> "*  *  *  in *Communale* and *Crisci* we made it clear that 'liability is imposed [on the insurer] not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable

settlements, a duty included within the implied covenant of good faith and fair dealing.' * * *. In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty of an insurer to accept reasonable settlement'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself —to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."

The court went on to state that under the "distinct tort theory" there was no requirement that severe emotional distress be alleged. The court said in conclusion at page 581:

"In summary, we conclude that plaintiff has stated facts sufficient to constitute a cause of action in tort against defendant insurance companies for breach of their implied duty of good faith and fair dealing; * * *, and that plaintiff has stated facts sufficient for the recovery of damages for mental distress whether or not these facts constitute 'extreme' or 'outrageous' conduct. * * *"

See also Annot., 37 A.L.R.2d 538 *et seq.* (1954).

■■ From the foregoing discussion we find the following principles in Illinois:

(1) Punitive damages may not be awarded generally in an action on a contract.

(2) However the breach of a contract itself may constitute an 'unusual case where an independent willful tort will be found.'

(3) In the life and health insurer-insured relationship there is a duty upon both parties to act in good faith and deal fairly with the other party to the contract.

(4) Breach of this duty implied by law is both a breach of the contract and a tort.

■■ There are several theories concerning such a tort. One theory is

that the breach, if in bad faith and outrageous, may constitute an intentional infliction of emotional harm. However, it appears in Illinois that punitive damages may not be awarded in an intentional infliction of emotional distress theory. (*Knierim v. Izzo,* 22 Ill.2d 73, 174 N.E.2d 157.) The other theory is that action of either party constituting "threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to the policyholder for the purposes of causing him to surrender his policy or disadvantageously settle a nonexistent dispute constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered." Punitive damages may properly be awarded in such a case.

■■ To briefly restate the facts in the present case, the defendants, on the basis of the plaintiffs' doctor's statement that he could not be certain whether the illness developed before or after the issuance date of the health policy, refused benefits to the insured plaintiff. They apparently did so in good faith belief that the illness, although undetected, must have developed prior to the date of issuance. This is a reasonable inference from the facts presented. The facts are that the insured applied for insurance late in June of 1969 approximately 5 weeks after a 'Pap' test was made for cancer of the uterus. The test was negative. The policy was issued with an effective date of August 1. On August 3, 1969, the insured experienced prolonged and excessive bleeding. After bedrest and medication were prescribed, applied and failed to abate the condition, the plaintiff was given a diagnostic dilatation and curettage. Her condition stabilized for a time but gradually worsened. A hysterectomy was performed on November 25, 1969.

In the course of the trial there was no evidence the defendants insurers ever accused the plaintiff insured of misrepresentation of her condition in applying for insurance as was the case in *Fletcher.* They did not engage in attempts to "settle" based on defenses which were known to be untrue. They merely refused payment on a claim which they believed to be excluded by an exemption in the policy for illnesses that occurred within 270 days before the effective date of the policy. The defendants did not delay excessively. The case was at issue within 4 months of the time the court granted plaintiffs' leave to file their first amended complaint, during which period defendant's motion to strike and dismiss it was heard and denied.

At trial the company was held to be in error as to when the illness did in fact occur. Therefore, it is proper that the plaintiffs be compensated for their damages as measured by the benefits denied them with interest

from the date of judgment. We find that from the evidence presented the actual damages of the plaintiffs were $1592.85.

To the extent that the judgment constitutes punitive damages, the judgment is reversed. Although in a proper case punitive damages may be awarded where the refusal to pay benefits is not made in good faith, and without fair dealing, that is not the case here. The decision to deny benefits was made in good faith on the basis of the insured's doctor's statement. The method of communicating that decision, and the behavior of the company was not "outrageous," nor was it in breach of the duty of good faith and fair dealing as that has been previously discussed. We find that the conduct of the insurer in this case does not rise to the level of a breach of either tort theory of sufficient gravity that punitive damages should be granted.

Numerous other defects at the trial level are urged by insurers as grounds for reversal. We find that none of them require reversal of the compensatory damages awarded.

■■ Insurers argue that the form of the jury verdict was improper since it did not break damages down by "actual" and "punitive" damages. However, they agreed at the trial level that the form was proper. They are now estopped to argue otherwise on appeal.

■■ Another argument of insurers is that no foundation for the plaintiffs' figures as to the worth of the insurance company was laid at trial. However, the error was harmless; defendants-appellants do not here argue that the facts presented were inaccurate or untrue. In *Wicks v. Cueno-Henneberry Co.*, 319 Ill. 344, 348, 150 N.E. 276, the Supreme Court said of a skiagraph (x-ray) where no foundation was established:

> "This objection should have been sustained. (*Stevens v. Illinois Central Railroad Co.*, 306 Ill. 370.) The error in admitting it, however, was not prejudicial, for the reason that the doctor testified that the condition shown by this skiagraph is the same as that shown by the other. Furthermore, the doctor testified fully concerning the condition of the injured hand, and there was no contention on the trial that the condition described by him does not exist nor that the skiagraphs show a condition different from that described by him." (319 Ill. 344, 348.)

It appears that defendants had been ordered to provide the information that plaintiffs introduced, and had failed to do so. Under Supreme Court Rule 219(c) (Ill. Rev. Stat., ch. 110A, § 219(c)) the trial court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including among others, the following: "* * * (ii) that the offending party be debarred from filing any other pleading

relating to any issue to which the refusal or failure relates." Since the trial court had the power to enter any order that was just, and since defendants-appellants do not contest the accuracy of the figures given, the lack of foundation was not prejudicial to defendants' case.

■■ It is argued by insurers that the use of an evidence deposition was improper, in the case of Doctor Hubert Allen, because the trial court did not find that at the time of trial as is required by Supreme Court Rule 212(b) (Ill. Rev. Stat. 1973, ch. 110A, § 212(b))that:

> "(1) The deponent is dead or unable to attend or testify because of age, sickness, infirmity, or imprisonment;
>
> *     *     *
>
> (3) the party offering the deposition has exercised reasonable diligence but has been unable to procure the attendance of the deponent by subpoena; or finds, upon notice and motion in advance of trial, that exceptional circumstances exist which make it desireable, in the interest of justice and with due regard for the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

It seems clear that in this case, the trial court erred in failing to make a finding that "deponent is  *  *  *  unable to attend or testify because of  *  *  *  infirmity  *  *  *." However, it is also clear that this failure does not require a reversal of the judgment as it is affirmed because the doctor, who was confined to a wheelchair, and who felt that he could not testify, would be exempt from testifying in person. The deposition was proper in this case; the trial court merely did not find, as it should have at the time of the trial, that the deponent was infirm.

■■ Insurers also argue that their *voir dire* examination was cut short by the trial court, and they were prejudiced thereby. In *Turner v. Wallace*, 71 Ill.App.2d 160, 169-70, 217 N.E.2d 11, the court said:

> "Under Supreme Court Rule 24—1 (Ill. Rev. Stat., c 110, § 101.24—1), the nature and extent of examination of jurors by counsel, on issues not concerning matters of law, is left to the sound discretion of the trial judge. The exercise of this judicial discretion is subject to review, however, and the test of whether there was an abuse must be determined by inquiry as to whether the party complaining was, on the whole, accorded a fair opportunity to question the jurors on matters affecting their legal qualifications, prejudices, and attitudes. Inquiries to collateral matters which seem to inordinately prolong the examination, or which seem designed to indoctrinate, condition, or ingratiate are properly excluded."

It does not appear to us that on this record defendants were not accorded a fair opportunity to question the jurors. At page 22 of their brief, defendants-appellants state:

> "The trial court erred in severly limiting the plaintiff's [*sic*] voir dire examination of the jury; and in particular, on page 2 of the Report of Proceedings with respect to juror John Keith, the defendant asked the juror whether or not he had any quarrel with a provision of a health services contract that required a waiting period before benefits would be paid under that contract for a condition or disease or ailment which existed prior to the effective date of that contract. An answer to this question was very materially involved in the suit  *  *  *."

Although the answer to this may reveal prejudice, it does not appear that failure of the trial court to allow the answer was an abuse of discretion.

■■ Insurers contend that certain instructions given by the trial court interjected false issues into the case where no facts existed to support the theory of plaintiffs-appellees. They rely on *Shore v. Turman*, 63 Ill. App.2d 315, 321, 210 N.E.2d 232, where it is stated:

> "We cannot quarrel with the proposition that a party has a right to have the jury instructed on his theory of recovery or defense. Equally entrenched in our law is the proposition that the lifeblood of a legal theory is facts and if there are no facts supporting the theory, it is error to instruct on that theory. Crutchfield v. Meyer, 414 Ill. 210, 111 N.E.2d 142; Magill v. George, 347 Ill.App. 6, 105 N.E.2d 808; 35 Illinois Law and Practice, "Trial," § 233. To inject into a case by way of instructions an issue not fairly presented by the pleading and the evidence in the case is reversible error. Turner v. Seyfert, 44 Ill.App.2d 281, 194 N.E. 2d 529; Chism v. Decatur Newspapers, Inc., 340 Ill.App. 42, 91 N.E.2d 114; Chevalier v. Chicago Transit Authority, 338 Ill.App. 119, 86 N.E.2d 838."

Plaintiffs below were presenting their case upon the theory that a breach of contract, which was also a tort, was involved in the case, and that because of the tort aspect, punitive damages could be requested, and an instruction regarding their award could properly be given. To the extent that plaintiffs' instructions dealt with punitive damages, the question is mooted by our determination that punitive damages under the theory of breach of the duty of "good faith and fair dealing" would not be appropriate in this case. Since it is also clear that the plaintiffs were entitled to damages for breach of the contract, or the tort, to the extent that the instructions deal with that phase of the case they are upheld.

■■ Insurers also argue that plaintiffs' argument to the jury was highly prejudicial in that the plaintiffs commented upon defendants' failure to bring in a doctor to prove their affirmative defense of pre-existing illness. Defendants' reliance on *Reinmueller v. Chicago Motor Coach Co.*, 341 Ill.App. 178, 93 N.E.2d 120, and *Bulleri v. Chicago Transit Authority*, 41 Ill.App.2d 95, 190 N.E.2d 476, as authority for the proposition that plaintiff cannot comment on the failure to prove an affirmative defense is unwarranted. The facts of *Bulleri v. Chicago Transit Authority* are distinguishable from those before us. There a self-serving accident report was filled out by a bus driver. There was no question of it being admitted, and both parties recognized that it could not be admitted into evidence. At conclusion of the case, counsel for plaintiffs commented upon the absence of the report, and drew an inference that the defendant was "hiding something" by not submitting it. The court there said:

> "We are urged to find justification for this part of the argument, in the line of cases declarative of an attorney's right to comment on the failure of the opposite party to produce evidence. (McNeff v. White Eagle Brewing Co., 294 Ill.App. 37, 13 N.E.2d 493; In Re Sandusky's Estate, 321 Ill.App. 1, 52 N.E.2d 285; Beery v. Breed, 311 Ill.App. 469, 36 N.E.2d 591.) These cases are based upon the unfavorable inference which arises logically from a party's failure to produce evidence available to him when that evidence might determine an issue in the case. (Barker v. Barker, 36 Ill.App.2d 20, 26, 183 N.E.2d 518.)
>
> The fallacy of relying on these decisions in the case at bar, however, is the absence here of a necessary ingredient of the rule; namely, that the evidence which a party has failed to produce must not only be available to him but also must be admissible. [Citations.]" (41 Ill.App.2d 95, 103.)

It was permissible for plaintiffs' attorney in the case at bar to comment upon the failure of defendants to produce an expert witness, *i.e.*, a doctor, to substantiate their affirmative defense. Certainly one inference that might logically be drawn from such an absence of proof is that there was no proof, and that as a result, no doctor could be obtained to testify about it. We find no prejudicial error in plaintiffs' discussion of the evidence or lack of it before the jury in his summation.

We therefore reverse the judgment, and remand this cause for entry of a judgment on behalf of plaintiffs against defendants consistent with this opinion.

Reversed and remanded.

JONES, P. J., and CARTER, J., concur.